## HENRY H. CROSS CO. v. BELL OIL & GAS CO.

No. 17493.    Opinion Filed Jan. 3, 1928.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

1. **Evidence — Presumption that Letter Reached Addressee—Predicate for Introducing Carbon Copy.**

Before the prima facie presumption of fact that the original of a letter, the receipt of which is denied, reached the addressee can obtain, and before a carbon copy thereof can be introduced in evidence, it must first be shown that the original thereof was properly addressed, that postage thereon was prepaid, and that it was deposited in the mails.

2. **Same—Necessity for Proof that Letter Was Actually Posted.**

Evidence that a letter was written, signed by the writer thereof, placed in an envelope, sealed, properly addressed and stamped and placed on the mailing desk, coupled with evidence that it was the custom of the office for the mailing clerk to take letters from the mailing desk and mail the same, is insufficient to prove mailing. The evidence should go further—there should be offered some evidence by the mailing clerk or other person tending to show that such custom was complied with.

3. **Sales—Action by Seller for Breach of Contract—Measure of Damages—Statutes.**

In measuring damages to the seller, upon breach of contract of sale by the buyer, sections 5987 and 6008, C. O. S. 1921, should be considered and construed in connection with section 6013, and in no event should a greater amount in damages be allowed a party than such party could have gained by a full performance of the contract on both sides, except as otherwise provided by said section 6013.

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County, Edwin R. McNeill, Judge.

Action by Bell Oil & Gas Company against Henry H. Cross Company to recover damages for breach of contract of sale. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Mason, Honnold, Carter & Harper, and Dent, Dobyns & Freeman, for plaintiff in error.

O'Meara & Silverman, for defendant in error.

HERR, C. In this case the Bell Oil & Gas Company sues Henry H. Cross Company, in the district court of Tulsa county to recover damages because of an alleged breach of a contract of sale.

It is alleged by plaintiff that, in the month of January, 1925, there was a written contract entered into between the parties, whereby the defendant, Henry H. Cross Company, purchased from the plaintiff, Bell Oil & Gas Company, 1,000,000 gallons of fuel oil at an agreed price of $1.30 per barrel, said oil to be delivered f. o. b. Grandfield, Okla., during the month of February as per shipping instructions to be given by defendant. It is alleged that defendant refused to accept the oil as provided by the contract, and that plaintiff was therefore damaged in the sum of $2,976.25.

It is contended by defendant that it gave to the plaintiff shipping instructions on January 29th to begin shipping February 1st and to ship thereafter four cars of oil per day until the quantity provided for by the contract was shipped; that the plaintiff failed and refused to comply with these instructions and thereby breached the contract, and by reason thereof defendant was entitled to and did rescind the contract.

The plaintiff prevailed at the trial. Defendant appeals.

It is contended by defendant that the court erred in excluding from the jury the carbon copy of a letter purported to have been written by it to plaintiff on January 29, 1925, in which it is contended shipping instructions were given. George H. Johnson, on behalf of defendant, testified that he had charge of the order and shipping department of defendant; that on the 29th day of January, he dictated the letter to the stenographer, which was by her transcribed and signed by him; that the letter was afterwards enclosed in an envelope addressed to the plaintiff at Tulsa, Okla., sealed and placed on the mailing desk in his office; that it was the usual custom of the defendant, in handling its outgoing mail, to place the same on the mailing desk, and that it was the further custom of the office for the filing clerk to thereafter take such mail from the mailing desk and drop the same down the mail chute. There was no testimony by the filing or mailing clerk or any other

person that this custom of mailing was regularly or on that day complied with.

It is conceded by plaintiff that, when it is shown by the evidence that a letter is properly addressed, sealed, stamped and mailed, the prima facie presumption follows that such letter was received by the addressee; but it is contended that the evidence offered was wholly insufficient to show mailing of the letter in question. It is contended that proof that the letter was signed, placed in an envelope, and sealed and placed on the mailing desk for mailing, coupled with the evidence that it was the custom of the office for the letters later to be taken up by the filing clerk and dropped down the chute, was not sufficient evidence of mailing; that the proof should have gone further, and some evidence should have been offered tending to show that this custom was complied with; that under the proof offered, before the presumption could obtain that the letter reached the addressee, the further presumption must first have been indulged in that the custom of mailing was complied with, thus basing a presumption upon a presumption.

On the other hand, it is contended by defendant that, where the evidence shows that a letter has been written, signed, and placed in an envelope properly addressed, sealed and placed in a receptacle for mailing, in accordance with the usual and prevailing custom, and that it was the custom for the mailing clerk to take the letter from such receptacle and mail the same, it is sufficient proof of mailing, and that additional evidence to the effect that this custom was complied with is merely cumulative.

On this proposition the authorities are in conflict. In 25 A. L. R., at page 13, it is said:

"There appears to be some conflict as to what evidence of a private business custom or usage is sufficient to prove the mailing of a letter. In many, if not the majority of cases, it is held that proof of a usage in the sender's office, whereby letters deposited in a particular place are taken by an employee and mailed by him, is not sufficient, standing alone, to establish the fact that a letter so deposited was mailed. In order that such evidence may be considered sufficient, it must be accompanied with proof showing a compliance with the custom, as, for instance, the evidence of the employee, whose duty it was to take letters so deposited, and mail them, that he actually did so."

The following authorities support the contention of plaintiff: Fed. Asbestos Co. v. O. P. Zimmerman (Wis.) 177 N. W. 881; Ford v. Cunningham, 87 Cal. 209, 25 Pac. 403; Brailsford v. Williams, 15 Md. 150, 74 Am. Dec. 559; Goucher v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447; Samuel Hardin Grain Co. v. Mo. P. R. Co., 120 Mo. App. 203, 96 S. W. 681; Sills v. Burge, 141 Mo. App. 148, 124 S. W. 605; Peirson-Lathrop Grain Co. v. Barker (Mo. App.) 223 S. W. 941; Gardam v. Batterson, 198 N. Y. 175, 139 Am. St. Rep. 806, 91 N. E. 371, 19 Ann. Cas. 649; Townsend v. Auld, 10 Misc. 343, 31 N. Y. Supp. 29; Commercial Cable Bldg. Co. v. McKenna, 171 N. Y. Supp. 409; Mankin v. Parry, 70 Pa. Super. Ct. 558.

The contrary doctrine is announced in the following cases: Prudential Trust Co. v. Hayes (Mass.) 142 N. E. 73; Myers v. Moore-Kyle Co. 279 Fed. 233; Smith v. E. W. Heitman Co. (Tex. Civ. App.) 98 S. W. 1074; Swampscott Mach. Co. v. Rice (Mass.) 34 N. E. 520; Whitney Wagon Works v. Moore (Vt.) 17 Atl. 1007; Lawrence Bank v. Raney and Berger Iron Co. (Md.) 26 Atl. 119.

These opinions speak for themselves, and we will not attempt to enter into a discussion or analysis of the same. It is sufficient to say that we are of the opinion that the weight of authority as well as reason support the contention of the plaintiff. There was no error in excluding the carbon copy of the letter offered.

The next assignment of error relates to the measure of damages. The evidence offered by the plaintiff is to the effect that repeated requests were made by it for shipping instructions; that no response was received until February 25th, when the defendant by telegram advised plaintiff that, because of its refusal to ship in accordance with its letter of January 29th, which it regarded as a breach of the contract, no shipments whatever would be accepted. The carbon copy of the letter referred to in this telegram having been excluded by the court, there is no evidence in the record tending to support the contention that shipping instructions were given by defendant.

Under this state of the record, assuming that the plaintiff was ready and willing to perform the contract on its part, the breach on the part of the defendant occurred on the 25th day of February, the date on which plaintiff was advised that the defendant refused to accept shipments under the contract.

The evidence discloses that the plaintiff had very little, if any, of the oil on hand

at the time of the alleged breach, or at any time thereafter or before, during the months of February and March, the testimony of the plaintiff being that the oil was available at Grandfield, Okla., and Arkansas City at their refineries, some under contract at other refineries, and the balance still being owned by the producers in the form of crude petroleum.

It will be remembered that the contract price of the oil was $1.30 per barrel; that delivery was to have been made under the contract during the month of February as per shipping instruction to be given by defendant. The evidence is undisputed that the lowest market price of the grade of oil called for by the contract, during the month of February, was $1.325 per barrel and the highest $1.35. On the 2nd day of March, there was a decline in the market which continued throughout the month, the average price during the month being $1.175 per barrel.

The plaintiff claimed that his measure of damages was the difference between the contract price of $1.30 per barrel and the price for which the same quantity and quality of oil could have been resold, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, to have effected a resale, and that this price, as shown by the evidence was $1.175 per barrel. Under the instructions of the court as to plaintiff's measure of damages, plaintiff recovered judgment on this basis. The court, in his instructions to the jury, submitted plaintiff's measure of damages as provided by sections 5987 and 6008, C. O. S. 1921, which provide:

"The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: * * *

"If the property has not been resold in the manner prescribed by section 7430, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

"6008. In estimating damages, the value of property, to a seller thereof, is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

Defendant contends that these sections do not apply and do not furnish the correct rule for the measure of damages in the instant case, for the reason that the oil was not in existence, on hand, and ready for delivery at the time of the alleged breach, and therefore plaintiff's damages should be measured under the rule provided by section 5976, under which rule it is contended plaintiff's measure of damage would be the difference between the contract price and the cost of production. Numerous cases are cited by counsel for defendant to sustain this contention, but all of the cases cited relate to sale of goods to be manufactured, and are, therefore, not strictly in point.

On the other hand, it is contended by plaintiff that it was entitled to the benefit of its bargain whether or not it had on hand the oil, and, even though immediately after the breach of the contract on the part of defendant, there was a rapid decline in the market price of the oil, the benefit of its bargain under the statute is the difference between the contract price and the price it could have obtained for a like quantity and quality of oil on resale, and at such time after the breach of the contract as would have sufficed with reasonable diligence to have effected a resale. We have examined the authorities cited by counsel to sustain this contention, but in all of the cases cited the commodity was on hand ready for delivery at the time of the breach. These cases are, therefore, not applicable to the facts in this case.

As to whether or not the measure of damages to the seller, in case of a breach by the buyer, as provided by the resale sections of the statute, can ever be applied where the article sold is not on hand, in possession of and ready for delivery by the seller at the time of the breach, we do not decide, but we do say that these sections must be considered and construed in connection with section 6013. This principle is sustained by this court in the case of First National Bank of Claremore v. Bryan, 124 Okla. 106, 254 Pac. 34.

The section of the statute above referred to provides:

"Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides, except in cases where recovery may be for exemplary damages and penal damages, and in sections 2871 and 2878 (5995, 6002)."

Had the plaintiff been compelled to pur-

chase oil on the market to fill its February contract, it would have suffered a loss instead of making a profit; had it delivered the oil from its refineries, it would have received less therefor than it could have received by selling the same quantity and quality of oil on the open market.

To permit this judgment to stand would permit the plaintiff to recover damages far in excess of what it would have gained had the contract been fully performed on both sides. In order to sustain this judgment we would necessarily be compelled to absolutely disregard the section of the statute above quoted. We would not be justified in so doing.

We hold, under the facts in this case, assuming that there was a breach of the contract on the part of the defendant and that the plaintiff was ready and willing to perform on its part, and that plaintiff did not have the oil on hand and ready for delivery at the time of the breach, plaintiff's measure of damage is the difference between the contract price and the cost of production.

Judgment should be reversed and the cause remanded for a new trial.

BENNETT, JEFFREY, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. p. 98, §39; p. 99, §40; p. 100, §41; 21 R. C. L. pp. 764, 765; 3 R. C. L. Supp. p. 1186; 5 R. C. L. Supp. p. 1171; 6 R. C. L. Supp. p. 1282. (2) 22 C. J. p. 99, §40; anno. 25 A. L. R. 22; 21 R. C. L. p. 763; 5 R. C. L. Supp. 1171. (3) 35 Cyc. p. 592.