## Executive Committee of Christian Education and Ministerial Relief for the Presbyterian Church of the United States v. Fidelity & Columbia Trust Co.

(Decided May 27, 1938.)

716

DODD & DODD for appellant.

WM. M. BULLITT, LEO T. WOLFORD and WM. H. ABELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Executive Committe of the Christian Education and Ministerial Relief for the Presbyterian Church of the United States, is a corporation organized by the Presbyterian church in the United States for the purpose of accumulating, holding and disbursing charitable funds, donated to the church or otherwise acquired, and it was so organized long prior to August 4, 1927. At that date it had assets composing the fund in its charge amounting to as much as $1,500,000.00 which was then on special deposit with the Louisville Trust Company, and under the immediate control and management of Judge John Stites, who was then, not only an officer in the Trust Company, but was also a prominent and active member of that religious denomination. He had managed the fund for a long time prior thereto without compensation, but the burden became too heavy and at his request appellant, as title holder to the fund, made an agreement with the Louisville Trust Company to take his place, whereby it was to and did receive an annual compensation of $1,500.00, payable semi-annually. The terms were, in substance, that the intangible items composing the fund were to remain on deposit with the Company, and it to have the authority to handle it, by way of sale, transfer and re-investment in the same manner that it would

its individual funds, and with the further authority to take title to any newly acquired investment in its own name only, but as custodian for appellant.

Prior to January, 1931, the trust company in the course of its management and custodian of the fund acquired in its own name two real estate bonds of $1,-000.00 each, one of which was executed by William Kuhn and Wife, and the other by Ophelia S. Patterson and husband—both of them being secured on real estate owned by the payors, which was mortgaged by them at the time of the execution of the bonds, not only to secure the particular bond but others of a series executed by the respective parties at the same time. The mortgages were executed to the Louisville Title Company, as trustee; it then being a going corporation and authorized to act as such trustee. In the set up of the transaction whereby the bonds and mortgages were executed to the Louisville Title Company, the makers were given an option or privilege to precipitate the payment of their obligations in the manner agreed upon in the terms of the contract, and the Kuhns and the Pattersons prior to January, 1931, took action for the precipitation of their bonds supra, but which were not due until a year thereafter. The bonds so executed were negotiable and they and their coupons were payable to bearer, who, as he acquired them, was supposed to notify the trustee of his ownership and it kept a record thereof in its office.

In the transaction whereby the obligations were executed and the mortgages taken it was furthermore stipulated that the trustee (Louisville Title Company) upon request for precipitation of the payments of the bonds, was required to notify the then holder of them, who in turn would present them to the trustee for payment in accordance with the rights of the parties as contained in the terms of the writings constituting the borrowing transaction by the payors. If the bonds were not presented by the holder within ten days after such notification by the trustee, the latter was then authorized to collect them and to release the mortgage executed to secure them. At the date set for the precipitated payment of the Kuhn and Patterson bonds supra (which then stood in the name of the Louisville Trust Company, a Kentucky corporation then engaged in business in the city of Louisville as paid custodian) the makers thereof appeared in the office of the trustee

and paid them and it later released the mortgages given to secure them. The collected funds were commingled with other assets of the trustee.

The Louisville Trust Company was closed by an act of its directors on November 17, 1930, which was followed by litigation brought by the commonwealth of Kentucky on relation of its banking commissioner, and in that litigation the appellee, Fidelity and Columbia Trust Company, was appointed receiver for it, and it was so acting on the dates of the precipitation and payments of the Kuhn and Patterson bonds here involved; but it neither at that time, nor at any time thereafter presented either of the two bonds, of which it was custodian and which stood in its name, to the trustee for payment, and neither of them was ever collected by it. In July, 1931, about six months after the trustee had collected the Kuhn and Patterson bonds, it also failed and was succeeded by some kind of re-organized company. Matters drifted along until October, 1932, when the defendant and appellee, Fidelity and Columbia Trust Company, made final settlement of its receivership of the Louisville Trust Company and was discharged.

Not until 1933 did plaintiff and appellant (to which we will hereinafter refer as the committee) learn of the precipitation, and payment in accordance therewith, of its two bonds (the Kuhn and Patterson ones). On the contrary, it was under the impression that they had been collected by appellee as the receiver of the Louisville Trust Company at their due dates in January, 1932, and that the proceeds were held by it under the custodian contract that the committee had with the Louisville Trust Company since August, 1927. After making that discovery it was learned that not only had its bonds not been paid to or collected by its custodian (the Louisville Trust Company, or its receiver), but that its mortgages to secure those bonds had also been released. As a consequence of which it could not enter into the reorganization of the Louisville Trust Company, which was made after the termination of its receivership, since its bonds were at that time worthless, because of the release of its mortgages. It then filed this ordinary action against defendant, both in its fiduciary capacity as receiver of the Louisville Trust Company and in its individual capacity, seeking to recover

the amount of its bonds with interest, upon the ground that defendant had been guilty of gross negligence in the performance of its duties as receiver of plaintiff's custodian.

Various defenses were made to the petition, among which was that the trustee of plaintiff's bonds (the Louisville Title Company) never notified it, either in its fiduciary capacity as receiver of the Louisville Trust Company, individually, or otherwise, in any manner whatever of the precipitation and collection of the Kuhn and Patterson bonds, and that having no knowledge thereof it was not liable, since its duty to perform the acts complained of did not arise until it received such notice. That issue was made by defendant denying the fact of notice which the petition averred had been given. Following pleadings made the issues upon that and all other defenses, and upon submission after evidence taken, the learned trial judge dismissed the petition upon the sole ground that the evidence failed to show the giving of the notice referred to by the trustee to the defendant of the precipitation and collection of the Kuhn and Patterson bonds. Since we have concluded that the learned trial judge correctly appraised the testimony on the issue of notice, and properly determined it in favor of defendant, it is unnecessary to even mention, much less determine, any of the other defenses and which task, therefore, we will not undertake.

At the material times involved both the Louisville Title Company and the defendant were each large active commercial corporations in the respective lines of business for which they were organized, and each of them employed a large force of clerks and officers, who individually had detailed and consecutive separate duties to perform in the execution and completion of their (corporate) business transactions. The evidence develops that on occasions an officer or employee with specific duties to perform would for some cause be absent, and a temporary substitute would then act in his place; but there is no evidence in the case that any of the transactions here involved were handled by any temporary substitute. The record is altogether silent upon that feature of the case. Before proceeding with a discussion of the evidence relating to the question of receipt of notice by defendant from the trustee with reference to the precipitation and payment of the bonds here involved, we deem it proper to state the condition

of the declared law with reference to the giving of notice through the mail.

The prevailing rule upon that subject is, that if proof is made of the due execution of the communication to be so sent, and that it was sealed and stamped in an addressed envelope to the known postoffice of the one to be notified or communicated with, then there will be a presumption that such person received it. But that presumption is one of fact and not of law, and is, therefore, not conclusive; but on the contrary, it is rebutable. It is not requisite that we insert standard texts in support of that proposition, since they unanimously declare the rule as stated, and which also appears to be followed by courts generally, including this one. Some of the domestic cases so declaring are Sullivan v. Kuykendall, 82 Ky. 483, 56 Am. Rep. 901; Home Insurance Company v. Roll, 187 Ky. 31, 218 S. W. 471; Proctor v. Ray, 194 Ky. 746, 240 S. W. 1063; Globe Indemnity Company v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990, and Id., 251 Ky. 442, 65 S. W. (2d) 456. Others will be found cited in those opinions; but in each and all of them—as well as in all other authorities referred to—it is expressly declared with emphasis that in order for the presumption of receipt by the addressee of a communication sent by mail it must be proven by the one insisting upon it (a) that the communication was prepared by the one entitled to give the information; (b) that it was put in an envelope and addressed to the sendee at his known postoffice; (c) that it was duly stamped; and (d) then deposited in the mail. In the absence of either of such requisites the presumption will not arise, and a court will not be authorized to find as a fact that the communication was received by the sendee. If, however, such requisites are proven the presumption will arise, with the burden cast on the sendee to prove that he never received the communication, or the information that it contained from any authorized source. We deem it unnecessary to insert excerpts from any of the opinions embodying the rules as stated, since we have correctly given them, and the reader may consult the opinions to ascertain the exact language employed by the courts in stating them. In reading them it will be found that in some of them the court found the evidence to be sufficient to raise the presumption of receipt by the sendee of the communication, while in others it was found not to be sufficient

for that purpose, which latter is particularly true in the two Daviess domestic cases referred to.

In cases the sender (insurance agent) of the communication testified to signing it on his desk and addressing an envelope to the sendee. He testified that in the course of the business being managed by him, the communication was later taken from his desk and arranged for mailing by a stenographer or employees in his office and was then posted, but none of the performers of those duties testified to having done so, and we held that the contents of the communication could not be read, since the sendee denied having received it, and the proof was insufficient to raise the presumption that it had been sent or received. We said as a reason therefor in the first Daviess opinion (47 S. W. (2d) 993) that "Since it was not shown that the letter was stamped and posted, the evidence was insufficient to raise the presumption of delivery to the addressee." In the second appeal of the same case that holding was adhered to; notwithstanding the fact that it was undeniably proven that the course pursued in that instance for the stamping and posting of the communication was the undeviating and customary one employed for that purpose in the office from whence the communication was sent.

In 25 A. L. R. on page 9, and in 86 A. L. R. on page 541, are annotations on the subject of "Character and sufficiency of evidence to show that letter was mailed," so as to raise the presumption of delivery and receipt to and by the sendee. Those annotations discuss practically if not entirely every phase of the question and contain elucidating comments by the writers thereof and by the courts, whose opinions are cited, that are both valuable and assisting in arriving at a correct conclusion. The alphabetical subdivision (g) of section I of each annotation is exclusively devoted to "Custom or usage in office of sender." That subdivision appears on page 13 of the volume 25 of the publication referred to; and on page 544 of the duplicate ansufficiency of evidence to show that letter was mailed," tion. In that subdivision, as contained in volume 25, the annotator says that: "In many if not the majority of cases, it is held that proof of a usage in the sender's office whereby letters deposited in a particular place are taken by an employee and mailed by him is not sufficient, standing alone, to establish the fact that a letter

so deposited was mailed. In order that such evidence may be considered sufficient it must be accompanied with proof showing a compliance with the custom, as, for instance, the evidence of the employee whose duty it was to take letters so deposited, and mail them, that he actually did so." Cases from the appellate courts of California, Maryland, Missouri, New York, Pennsylvania, Wisconsin and England are cited in support of that statement. In support of a similar statement made under the same subdivision in the annotation in volume 86 of that publication additional cases from the Supreme Court of the District of Columbia, Alabama, Oklahoma and Iowa are cited, and a reading of them will disclose that all of the requisite steps, supra, to raise the presumption, in the recurring chain of facts intervening from the time of the preparing and signing of the communication to its posting in the mail, must be shown by the sender before the presumption of receipt will be indulged. If any fact in the chain of facts necessary for that purpose is not proven, then the presumption will not arise. Among such facts, as we have seen, are the enclosing the communication in a properly addressed envelope; its stamping with the required postage, and its later posting in the mail.

It would lengthen this opinion far beyond necessary bounds to go into the details of the testimony of the facts happening in the office of the Louisville Title Company at the time that the precipitation notice was due to be sent by it to the holder of the Kuhn and Patterson bonds in this case. Suffice it to say that it proved, in substance, that certain marks and indications, on cards or records, indicating the fact of a request for precipitation, and for the performance of other duties by employees before the payment was received in accordance therewith—and in the process of giving notice to the holder—were customarily made and done. For instance, the witness, Sprague, testified that he made the necessary indications on certain papers and records relative to one of the bonds in this case indicating to other employees to perform other acts, after which the matter passed on to others who were to perform still other duties in the chain, until it came to the one whose duty it was to mail the notice, and the most that any of them could state was that it was their custom to carry out such indicated instructions; but none of them had any recollection concerning any no-

tices whatever as having been prepared, sealed, addressed, stamped or mailed to defendant as receiver of the Louisville Trust Company, or to that company. It was the duty of one of such employees to fold, encase and address such communications. It was the duty of yet another to stamp them and deposit them at a certain designated place in the office where the janitor would take the accumulated stack of mail and deposit it in a mail box. Those who testified said that it was the universal custom with all employees in the office of the Kentucky Title Company to so handle and manage its outgoing mail; but no one in this case whose duty it was to stamp such communications was introduced or testified. The final step taken by the janitor consisted—as given by him—only in taking the mail he found at the proper place and carrying it away and properly posting it. But of course he never knew to whom the communications were addressed and of course possessed no knowledge of the contents of the envelope.

The evidence for plaintiff, therefore, in this case went no further towards proving the necessary requisites for creating the presumption of receipt by the addressee than was shown in the Daviess cases, supra, or any of those cited and referred to supra. The Kuykendall and Ray cases, relied on by appellant's learned counsel, contained no such missing links in the testimony adduced, since the communication in each case was actually stamped and mailed, and it was held that the prior requisites for the creation of the presumption of receipt of the communication was sufficiently proven. The testimony in this case, however, is far different and is practically on all fours with that found in the two Daviess cases, and discussed in the annotations supra.

It might be said that the rule as so construed is too strict and casts a greater burden on the one insisting and relying upon receipt of the communication than should be required of him. But it must not be forgotten that, both acquisition of rights and impositions of obligations are frequently made to depend on receipt of communications made through the mail, and before declaring either of them established and enforceable the proof should be clear and convincing of the existence of the facts necessary therefor. We are not prepared to say that the rule as so announced embodies

724

unnecessary strictness; but if we were otherwise inclined we would feel bound to follow the rule as so settled and determined.

Having so concluded, it follows that the court properly dismissed the petition, and the judgment is affirmed.