DENGLER *v.* DENGLER.

4-5171 120 S. W. 2d 340.

Opinion delivered October 17, 1938.

914

*James Merritt,* for appellant.

*Ada Marett Carter* and *John P. Streepey,* for appellee.

BAKER, J. This appeal comes from a decree vacating and setting aside a divorce decree issued at a former term of the chancery court. W. P. Dengler sued Minnie Mae Dengler for a divorce on the ground of desertion. Summons was issued and served and return made thereon for more than twenty days before the case came on for trial. The defendant did not appear, and on the 29th day of January, 1937, decree was entered. There is no question about the regularity of the decree in all respects. Thereafter, on the 29th day of September, 1937, a motion was filed, using the same style as the case above set out, by Minnie Mae Dengler, to set aside the decree rendered on January 29. She pleaded that she was served with a copy of the summons in the early part of January, 1937, and that she immediately discussed the matter with an attorney and that she wrote advising Mr. Dengler that she proposed to contest his suit and advised him as to the name of the attorney whom she had consulted and asked him to notify her a week or ten days before the case was set for trial, so that she might arrange to be present. She pleads further that she was ill and confined to her home for several meeks, but as soon as she was able to do so she wrote Mr. Howard Clayton, sheriff of Desha county, and asked him to check the records and advise her when the case was set for trial; that Mr. Clayton advised by return mail that decree had been granted on the 29th day of January, 1937; that she then wrote the chancery clerk asking for a copy of the complaint and decree; that he did not grant her request. She then alleges that the decree of divorce was obtained by artifice, trick and fraudulent practice upon the court and herself at a time when she was con-

fined to her home because of illness. She stated in her motion that she had never given the plaintiff cause for divorce, but on the contrary plaintiff had repeatedly given defendant cause for divorce. She asserted that she did not desert plaintiff on April 19, 1935; that she has not continued to absent herself from him without cause. She alleged that when she left her home in Mc-Gehee, Arkansas, (where she had lived with the plaintiff), she came to Little Rock on account of her father's illness and death and that, though requested to do so on numerous occasions, defendant has repeatedly refused to permit her to return home; that defendant knew at the time the decree of divorce was granted that she had not been notified when the case would be submitted and that she was ill and unable to attend court; that he deliberately took advantage of these facts and obtained the decree during her absence; that he knew the allegations contained in his complaint were false and fraudulent. She further alleged that she had a good and meritorious defense to the complaint; that the decree should be set aside and she be granted a hearing; that in the decree no provision was made for her support, maintenance, nor with reference to her dower right to property accumulated by plaintiff and defendant during the twenty-six years of their married life. She prayed that the decree of divorce be set aside and nullified; that plaintiff be required to pay a reasonable fee for her attorney, suit money, costs and temporary maintenance.

A summons was duly issued upon this motion and served. An answer was filed to the motion and in this answer every material allegation was denied by the appellant. He denied that she wrote him a letter advising that she proposed to contest the suit or that she gave him the name of the attorney whom she had consulted, or that she had asked him to notify her a week or ten days prior to the date when the case had been set for trial. He admitted, however, that she had written Mr. Clayton; that Mr. Clayton had answered her letter advising her about the rendition of the decree and that she then wrote the chancery clerk; denies that she was

ill and confined to her home prior to the time she wrote Mr. Clayton, the sheriff of Desha county; denied the divorce was obtained through artifice, trick and fraudulent practice; denies that decree was obtained at a time when she was confined to her home because of illness; denies that she had not given him cause for divorce, and also denied that portion of her petition in which she set out her defense to the cause upon which plaintiff was granted a divorce; denied that she was not notified of the date when the case would be submitted.

He also denied that the allegations upon which he proceeded were false or fraudulent or that he took advantage of her in any manner; denied that she had a valid and meritorious defense; denied that she was entitled to any dower interest and specially pleaded that the estate accumulated by plaintiff and defendant during their married life was in form of cash, stocks and bonds and that when they separated the petitioner carried with her all the cash, stocks and bonds to which they were the title owners, and that she retained the same in her possession. He pleaded that since they are no longer man and wife he is under no obligation to maintain her and that she has no right to sue for alimony, maintenance and attorney's fee.

He pleaded specially that she is barred by laches to maintain the action.

He pleaded also that it was because of her inattention, carelessness, and negligence that she did not defend, plead or appear when the case was ready for trial or to advise the court of her condition and ask for a continuance. He also pleaded that the petition or motion was not sufficient in form prescribed by statute to obtain the relief sought; that is, to set aside the decree, the term having lapsed.

Upon the presentation of the evidence, the court made an order vacating the decree of divorce, providing for temporary maintenance of the defendant, for suit money and for attorney's fee, and from this order and decree of the court setting aside and vacating the former decree is this appeal.

We think it proper to set forth some of the material testimony offered in this case in order that we may dispose of all matters at issue between the parties.

Mrs. Dengler testified that summons was served upon her on or about January 5, 1937; that she had been ill and very much grieved on account of the death of her mother; that she had been threatened with pneumonia. She had some teeth extracted and ran a temperature for some weeks; that her mother had gotten sick the first of August and died on the 5th of November. She had cared for her mother during her illness. She had no funds with which to employ a nurse for her mother. There were other matters that made her more nervous and that was the mortgage on the home of her mother had been foreclosed and she had no funds to take care of it; that her mother's illness caused her to be nervous and to worry; that she had no money to live on; that she had been sewing in order to make a living. When she was sick friends cared for her. A Mrs. Newman took care of her during her illness. After she was taken sick she consulted an attorney over the telephone.

Since we deem it unnecessary to give the names of the attorneys we shall merely refer to them as attorneys, without setting forth their names.

She explained to one attorney she had no money to pay a fee. This attorney said she, the attorney, would write for a copy of the complaint. The witness says that she wrote the plaintiff with reference to it, wrote a letter about the 18th of January, but never received any reply. She made a copy of the letter. She identifies her letter as dated January 18. She says that it is a copy, but she sent the original. The letter is set out. In her letter she said that she would fight to her last breath, cautioned the plaintiff to be sure that he did not misrepresent anything; advised that she would be present, would see things through if she had to hitch-hike; that she was almost down with a terrible cold in her chest and had a tooth extracted; but she would not allow that to stop her from coming to the trial. She then asked him when the trial would be and asked to be notified a week or ten days in advance. She then accuses the plaintiff

of having gone to her father's funeral drunk and that his appetite for liquor was the cause of their troubles and accused him of ruining their married life. In the closing part of the letter she again referred to the fact that she was ill, running a pretty high temperature, but advising that she would be at court upon the appointed date and again announced she wanted to be notified soon in order to prepare for the trip. She also asked to be sent a pass and money. She testified further that she was ill and it was up in March before she was able to be up and around. She wrote Mr. Clayton a letter. This letter was offered in evidence in which she stated that the summons was issued on the 5th of January and served on her on the 7th, and that she had twenty days in which to answer; that in January she took the letter to the Domestic Relations Department in the court house; that up to date she was told that they had no reply from Arkansas City. Mr. Clayton answered at once and advised that the divorce was granted on January 29th and advised her that she had failed to have anyone there to represent her and that the court had rendered a decree. He also advised her that a letter had been received from her lawyer at Little Rock, but it was not written until after the decree had already been rendered. She then took up the matter with her present lawyer.

On cross-examination she advised that she left Mc-Gehee April 8, 1935, and went to Little Rock. When she reached Little Rock she talked the matter over with an attorney; that he went into detail advising her about the case, that she didn't pay any fee and didn't employ the attorney She, also, talked the case over with another attorney, just as a friend. She did not hire him. She says further that a few days after she was served with summons, as soon as she could, she took the matter up with her attorney in Little Rock at the Domestic Relations Department. She delivered the summons to her attorney. On January 29th, she could not say whether her attorney still had the summons in her possession. She talked over the telephone with her after she carried the summons to her. She was unable to go, but she dis-

cussed the case over the telephone three times. She presumed she wrote Mr. Clayton about the 15th of February. She was sick on January 29th, very ill and in bed. She was not having medical attention, because she was not able to pay a doctor. She was suffering from a bad cold and extremely nervous. She knows Mr. Jackson, the clerk at Arkansas City. She did not attempt to call him about the case. She never tried to call the judge of the Desha chancery court. Did not know where his office was located. She expected her lawyer to look after the case. That is what she turned it over to her for. When she turned it over to her she expected that she would look after her affairs in the Desha chancery court. She was relying solely upon her to answer this summons; does not remember the exact date she employed her present attorney. She employed her present attorney about February 23, 1937.

It is unnecessary to set forth the evidence of Mrs. Eva Newman, who was the nurse and who testified she waited upon Mrs. Dengler during her illness. It is sufficient to say that her testimony corroborated that of Mrs. Dengler, both as to the severity of her illness and the time at which she was suffering.

Mr. Dengler testified that he was living at the Shepherd Hotel in McGehee during 1937 and received his mail at post office box 372; had had that box for four or five years. He was handed the letter dated January 18, 1937, and made an exhibit to Mrs. Dengler's testimony as having been written by her. He testified that he had not heard from her during the year, had not had a line from her; that if the letter had been mailed in the United States mail at Little Rock he would have received it. He testified further that during the time he and his wife lived together they did not accumulate any real estate such as lands, houses and lots, but only stocks and bonds. When Mrs. Dengler left in 1935, she took all of them and the insurance papers also. He did not know prior to the date of the trial of the case, on January 29th, that his wife intended to be present and defend the suit. He did not know that she was sick at the time. There was

a telephone in the hotel where he resided and had been during all the time he lived there and when a telephone call came for him he got it. The last time he saw Mrs. Dengler was prior to the time of the trial at her mother's funeral. Had not seen her since. He received letter from Mrs. Carter, deputy prosecuting attorney for the Sixth Judicial District of Arkansas.

On cross-examination he admitted that a registered letter had once been sent which he returned unopened. He had no idea what it contained, but was shown that it contained one share of stock issued to him by the National Electric Signal Company. When it was offered for identification by appellee's attorney, she said "it's the stock which you and your attorney state can be sold for $1,500." He stated further that since he had not heard from her during the year he did not suppose she would contest the divorce action.

The clerk testified that he mailed a copy of the complaint to somebody before January 29, 1937, before the decree was entered in the case. His correspondence was in the court files. He thinks the copy of the complaint was mailed to the first attorney for Mrs. Dengler. He also stated that he handles his correspondence promptly. He was sure he had mailed the copy as he had just stated.

Another witness was offered who testified that she and Mrs. Dengler were friends; that she lived in Little Rock, and that she frequently talked with Mrs. Dengler; that Mrs. Dengler advised her about the suit pending in the Desha chancery court, and that she said that she had lost the case through the negligence of her attorney and on account of such negligence the divorce was granted in January. This conversation occurred after the divorce was granted.

The foregoing is not by any means all the testimony taken in this proceeding, but it is the material part thereof and upon which the court acted. We shall attempt to avoid a long discussion of this testimony, but a part of it becomes important to a proper decision of the issues involved here.

This suit was not filed until two terms of the Desha chancery court had passed, after the rendition of the decree of divorce, but that may not make any particular difference in this case. It is contended that this proceeding is warranted under the provisions of § 6290 of Crawford & Moses' Digest, now § 8246 of Pope's Digest, and that the 4th and 7th subdivisions of said section are the ones applicable in this proceeding. The provision of that section is, quoting the 4th and 7th subdivisions:

"Fourth. For fraud practiced by the successful party in the obtaining of the judgment or order.

"Seventh. For unavoidable casualty or misfortune preventing the party from appearing or defending."

We think there is no substantial showing in this case as tending to show any fraud on the part of the plaintiff in this case. However, it is urged by the appellant in his brief that the letter of the appellee, dated January 18, 1937, in which she asked that she be advised as to the time the case would be tried, was received by the appellant and that the court properly so found. We do not think that conclusion is justified. It is true there is a presumption that if a letter be properly addressed, stamped and posted, it reached its destination. There is a presumption only, but in this day, with the efficiency of the modern mail service, it perhaps should be regarded as a strong presumption. But presumptions do not control in the face of evidence such as we have here a positive denial that the letter was received. But if it be treated as sufficient to raise a question of fact, we are confronted with a situation in which the appellee testifies here that she sent the original copy of the letter to the appellant and that she kept a copy. The copy kept, however, is an original and not a carbon copy, which may of itself be of some significance. It may also be suggested with propriety in this regard that the testimony of the appellee, as abstracted, does not show how the letter was addressed, nor does it show that it was stamped. That may be rather technical, but the appellee relies upon a presumption which does not arise, unless the evidence itself

discloses that the letter was addressed, stamped and posted. Citations of authorities are not necessary.

Our attention is called to the fact that the appellee, though she pleaded that she had a meritorious defense, and set out in her pleadings certain matters which she said constituted her meritorious defense and which might be so deemed, if established by evidence. Appellee's attorney offered to produce testimony at one time, in the course of the trial, to show what this meritorious defense was, but at that time she was prevented from proceeding by the learned chancellor, who delayed the hearing upon that issue temporarily, not until another day, but until later in the same proceeding. It happens, however, that at no time thereafter in the proceeding was there any evidence introduced as to this meritorious defense. Appellee argues, however, in her brief, that a *prima facie* showing is made as to what this meritorious defense was as it was stated in a letter of January 18. It may be true that that was her defense, but, if so, it was not evidenced by her pleadings in which she merely states as a conclusion that she had a meritorious defense. The matters alleged in the letter are not sworn to by any witness. All the allegations of the complaint were denied.

It would unduly extend this discussion to set forth in detail the findings of the chancellor upon this trial, so we think it is sufficient to say that the court found, and, perhaps, correctly so, according to a preponderance of the evidence, that on January 29, 1937, the date of the trial, the plaintiff was sick, too ill to be present at court, not able to have made a defense had she been present at that time, and, perhaps, not any more physically ill than she was mentally. While there is a suggestion of doubt as to these facts, we agree that the conclusion reached was correct according to the evidence produced, but the good chancellor wholly missed the very matter in issue upon this point. Had these facts been presented in any court upon request for a continuance of the cause, it would have been an abuse of discretion to have refused the request.

There is no evidence in this entire record that the appellee intended to be present at the trial of this case on January 29. True, she said in the letter she would be present at the trial, but it evidences the fact she did not know the date of the trial. We have hereinbefore set out a small excerpt of the testimony of the appellee to the effect that she expected her lawyer in Little Rock, who had been prior to that time, at least, in the Domestic Relations Department, to defend the case and to file an answer or take such proceedings as were necessary for her protection; though she had been sick, she had been able to telephone her lawyer, she says, on three different occasions. She had gone to see her once. She, herself, analyzed the situation by saying that she lost her case by reason of the negligence of her counsel. That is the testimony in this record as presented by the appellee as sworn to by her former friend, and not denied by her. It is upon this state of the record that we are confronted with the decree vacating the decree of January 29, 1937.

The court after commenting upon the fact that no suitable provision for Mrs. Dengler was made said: "If some kind of settlement could be made by Mr. Dengler with his wife this court would allow the decree to stand. But, unless something like that is done and I may be informed as to whether there is any disposition to follow the court's advice or not—I may be informed at any time—but if it is not done, the court is going to exercise its prerogative and set aside the decree. I am perfectly willing now to find those things out."

Later on the court suggested: "If that National Electric Signal Company stock is worth $1,000, and he would give her that, and then you could figure that as $1,000 to go over a certain period of time. That is our proposition—you take a certain length of time in which he would pay a certain amount, including the $1,000 as payment for so many months in there, and then a small amount of money so as to bring that up to $50 per month —I think that could be worked out. Just divide that into $25 payments, and then put $25 in addition to that per

month, to make it $50. That could be worked out. That would be $25 a month for three years and four months.''

This proposition was rejected by the appellant and thereupon the court ordered the decree to be set aside, $25 to be paid as court costs, $50 as attorney's fee, and $50 per month alimony.

It must be remembered that the only evidence about the ability of the appellant to pay was that introduced by himself in which he says at the time of their separation, Mrs. Dengler took with her their joint accumulations, including cash on hand, stocks and bonds, and that she retained possession of them. There was no dispute of this statement. Mrs. Dengler, however, corroborated this to a certain extent by producing at the trial the $1,000 certificate of stock just above mentioned. Must it not seem proper that we should be just before we are generous, particularly when our generosity affects another's rights?

We have already set forth that bit of evidence by the friend of Mrs. Dengler, who testified that Mrs. Dengler had given as the reason or cause for the decision of the court adverse to her interests—the negligence of her counsel. Must it not be conceded that this evidence must be treated as binding since it was not in any manner disputed? If so, it would seem, absolute, that the provisions of subdivision 4, above quoted, are not applicable to this case, nor was there any unavoidable casualty or misfortune under subdivision 7 preventing the party from appearing or defending. It was not necessary that she appear in person. She knew that. She relied upon her attorney to appear for her. The failure and neglect of her attorney binds her as much as if it were her own personal failure or personal neglect to appear. There certainly should be no relief or aid extended to one guilty of legal neglect. *Hanna* v. *Morrow,* 43 Ark. 107; 1 Black on Judgments 415, § 341, 34 C. J. 307, § 527; *Stiel & Co.* v. *Geo. P. Ide & Co.,* 116 Ark. 244, 172 S. W. 871; *Blackstad Merc. Co.* v. *Bond,* 104 Ark. 45, 148 S. W. 262; *Berringer* v. *Stevens,* 145 Ark. 293, 225 S. W. 14.

It was error to vacate this decree under the facts and circumstances here established. Decrees of divorce are not less stable than are those in other causes. In truth it has been held that the courts should proceed most cautiously in setting aside a decree of divorce. A decree may be the result or settlement of issues between the parties, but it is more than that. The state is the silent third party, interested not only in Domestic Relations, but to the same extent in the verity and stableness of public judgments and decrees. Such decrees are not true defaults. The statutes so provide. All material facts must be established by proof. *Vanness* v. *Vanness*, 128 Ark. 543, 194 S. W. 498.

It is not necessary to discuss laches or other matters presented though pertinent and convincing as the record discloses.

It has been suggested in the presentation of this case that the appellant is somewhat technical in some respects. However, that may be, the technicalities that make for justice may not be casually disregarded.

It appears that Mrs. Dengler has, at least, the one certificate of stock and maybe other stocks and bonds, and her possession long prior to the divorce, has been acquiesced in by the appellant in this case. Her title thereto, however, may not be complete in that they have not been properly indorsed.

The decree of the chancellor, setting aside the divorce and fixing costs and alimony, is reversed with directions to reinstate the decree of divorce and if the appellant does not voluntarily assign or transfer such stocks and bonds, as have been retained by the appellee in this case, the court will make such transfer of them by decree or order as may be necessary in that regard. Appellant will pay all costs.

This will not affect any property rights as between the parties not here determined expressly or by necessary implication.