LEASING ASSOCIATES, INC., Plaintiff-Appellee,

v.

SLAUGHTER & SON, INC., and F. E. Slaughter, as Guarantor, Defendants-Appellants.

No. 71–1076.

United States Court of Appeals, Eighth Circuit.

Oct. 21, 1971.

Stephenson, Circuit Judge, concurred and filed memorandum in which Matthes, Chief Judge, and Bright, Circuit Judge, joined.

Don Gillaspie, El Dorado, Ark., for defendants-appellants.

W. J. Walker, Little Rock, Ark., for plaintiff-appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

Negotiations between Leasing Associates, Inc., a Texas corporation, hereinafter referred to as plaintiff, and Slaughter & Son, Inc., an Arkansas corporation, and F. E. Slaughter, as guarantor, hereinafter sometimes referred to as defendants,[1] culminated in the execution of a leasing agreement dated May 10, 1967. Under the terms of the lease, Slaughter obligated itself to make certain payments to plaintiff and F. E. Slaughter guaranteed payment of all sums due under the instrument. Slaughter, as lessee under the agreement, took possession of a 1967 Chevrolet truck and a 1964 GMC Barco Log Loader.

A controversy developed between plaintiff and defendants over the fitness of the Chevrolet truck. Defendants repeatedly complained that the truck was defective and not fit for its intended use in hauling logs. Eventually, they discontinued making payments due under the lease. They returned the truck to plaintiff and thereafter, pursuant to proper notice from plaintiff to the defendants, the truck was sold by plaintiff.

The complaint in this action was filed on October 21, 1968, in the United States

---

1. For the purpose of convenience, we refer to Slaughter & Son, Inc. as Slaughter.

District Court for the Western District of Arkansas. Plaintiff sought a judgment for $10,001.42, representing the accrued and unpaid rent due on the truck, the amount expended by plaintiff for repairs, and the deficiency after giving credit for proceeds of sale. Defendants, on October 10, 1969, answered and counter-claimed for damages allegedly sustained because of the unfitness of the truck.

Defendants also defaulted in payments due on the log loader. In June, 1969, possession of that equipment was taken from defendants in a replevin proceeding filed in an Arkansas state court. The plaintiff obtained possession of the log loader on June 11, 1969. Pursuant to a notice to the defendants, the reasonableness of which is an issue on appeal, the log loader was sold for $500 on or about October 16, 1969.

On August 31, 1970, nearly two years after the filing of the original complaint, plaintiff filed its first amended complaint to recover, in addition to the amount allegedly due on the truck transaction, the amount it claimed to be due on the log loader transaction.

A jury trial resulted in a verdict in favor of plaintiff and against both defendants for $18,508.73, being the full amount prayed for.

Two issues are presented for our determination.

## I

Defendants first assert that it was error to deny their motion made at the close of plaintiff's evidence and renewed at the close of all the evidence for a directed verdict on plaintiff's entire cause of action. This motion was premised on the concession by plaintiff that it had not qualified to do business in Arkansas and some evidence showing that the contract was made in Arkansas. Consequently, it is argued that Ark.Stat. 64–1202 (the Wingo Act) rendered the contract void ab initio, Pacific National Bank v. Hernreich, 240 Ark. 114, 398 S.W.2d 221 (1966).

The short and decisive answer to defendants' contention is that the defense which it asserts here was an affirmative one, which had to be pleaded. Rule 8(c), Fed.R.Civ.P. provides in pertinent part:

"In pleading to a preceding pleading, a party shall set forth affirmatively * * * *illegality* * .* * and any other matter constituting an avoidance or affirmative defense." (Emphasis supplied.)

As indicated by the Arkansas court in the *Pacific National Bank* case, supra, the Wingo Act is a "penal statute" which punishes doing business without certification by creating an absolute defense against recovery on contracts which are deemed illegal if made in contravention thereof.

■ We are mindful that under Rule 15(b), Fed.R.Civ.P., when an issue not raised by the pleading is tried by express or implied consent of the parties, it shall be treated in all respects as if it had been raised in the pleadings. See Farm Bureau Co-op Mill & Supply v. Blue Star Foods, 238 F.2d 326, 332–333 (8th Cir. 1956). The record before us fails, however, to furnish sufficient basis to warrant a holding that the illegality defense was tried by implied consent. While it was conceded without objection that plaintiff had failed to qualify to do business in Arkansas, that fact alone is not conclusive of the defense. The Wingo Act only provides that an unqualified corporation "cannot make any contract *in the State* which can be enforced * * *" (Emphasis supplied), and Arkansas caselaw construes that language to make the statute inapplicable to contracts "made" extraterritorially even if they are to be performed in Arkansas. United Press International v. Hernreich, 241 Ark. 36, 406 S.W.2d 317, 320–322 (1966). But see Hogan v. Intertype Corp., 136 Ark. 52, 206 S.W. 58 (1918). Therefore, the place of the making of this contract was an essential element to the issue which the defendants now urge upon us. But, as ob-

served, this issue was not sufficiently litigated to justify us in reversing and directing a judgment for the defendants.[2]

## II

Defendants' second point relates to that part of the judgment for $8,507.31, the amount due on the Barco log loader. Specifically, defendants' contention is that the court erred in admitting into evidence over their objection an exhibit purported to be a copy of a letter dated October 6, 1969, claimed to have been sent by plaintiff's credit manager to "Mr. F. E. Slaughter, F. E. Slaughter & Sons, Inc., Junction City, Arkansas." The argument is advanced that the proper foundation was not laid for admission of the exhibit, i. e., that the evidence was insufficient to support a finding that the original of the letter had been sent to the above-named addressee via the United States mails.

Before we review the factual foundation bearing upon this question, we turn to the applicable provisions of the Uniform Commercial Code, as adopted in Arkansas, and caselaw pertinent to the issue. Section 85-9-504(3) Arkansas Commercial Code provides in relevant part:

"Disposition of the collateral may be by public or private proceedings * * * every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable * * * reasonable notification* of the time and place of any public sale or *reasonable notification* of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * * *" (Emphasis supplied.)

The sanction which makes the foregoing requirement viable is a rebuttable presumption that the value of any collateral sold without notice is equal to the debt. Therefore, as a prerequisite to the recovery of a deficiency judgment in Arkansas, the secured party has the burden of proving either the actual value of the collateral at the time of its sale after repossession, or proving that reasonable notice was sent (receipt need not be proven). Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21, 22 (1968); Norton v. National Bank of Commerce of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538, 540-541 (1966).

In the present case, however, the plaintiff offered no proof that the $500 realized from the sale of the log loader was the fair and reasonable market value of that equipment. Therefore, if plaintiff failed to discharge its burden of proving that it gave reasonable notice as required, it would be precluded from recovering the deficiency under attack.

There are two prongs to the notice question: (1) whether the mailing of a notice through regular mail channels will suffice to support a finding that reasonable notice was sent to the debtor; (2) whether the evidence here was sufficient to show as implicitly found by the jury that the letter of October 6 was in fact mailed.

Turning to the first of these, the Arkansas Supreme Court has been confronted with the identical question, that is, whether a notice in the form of a letter sent by regular United States mail was "reasonable notification," as required by Ark.Stat.Ann. § 85-9-504, supra. In reversing the trial judge, who had ruled that the letter constituted reasonable notice as a matter of law, the Supreme Court held that the evidence was sufficient to present a question of

---

2. A careful reading of the original record leads us to conclude that the trial was focused in the main on defendants' claim that the truck was unfit for use in Slaughter's business. Defendants, apparently for trial tactics, seized upon this facet of the case in an effort to defeat plaintiff's claim for the balance due in connection with the leasing of the truck and also to recover a substantial judgment on defendants' counterclaim.

fact for the jury to resolve. Baber v. Williams Ford Co., 239 Ark. 1054, 396 S.W.2d 302 (1965). Thus, it appears that the *Baber* case definitely resolves the first phase of the notice issue in favor of the plaintiff.[3]

We turn then to the more troublesome problem of whether the evidence was sufficient to say that the letter of October 6, 1969 was sent by placing the same in the mails. On this question, the evidence is sketchy and far from satisfactory.

The notice issue first entered the case near the end of the trial. Larry Slaughter, son of F. E. Slaughter, when asked on cross-examination by plaintiff's counsel whether he had received the letter of October 9, replied:

"Not that I can remember.

Q. You have any knowledge of anyone in your company receiving this letter?

A. Well, I don't know about it if they did."

The foregoing is the only evidence pertaining to receipt of the letter. F. E. Slaughter, to whom the letter was addressed, and who testified, was not interrogated as to receipt by him of the notice.

Following Larry Slaughter's testimony, plaintiff's counsel, apparently realizing plaintiff had the burden of proving that the notice had been sent, called Ernest M. Dillinger as a rebuttal witness.

The substance of this witness' testimony was that Exhibit 11 was a copy of the letter which he had written to Slaughter & Son, and that it was sent by regular mail. On cross-examination, Dillinger stated that he dictated the letter to his secretary, "she gave it to me for my signature and it went out in the normal course of business in my office as all mail does each day.

"Q. You assumed, then, that it went out? A. Yes, I assumed that it went out * * * I cannot prove it ever got inside the mailbox. All I can say is it went out of our office in the normal course of business.

Q. You assumed that it did? A. That's right.

Q. You don't know whether it ever got past your secretary's desk, do you? A. Yes, it came back for my signature, I put it in my out box for the mail clerk to pick up and mail."

Whether the foregoing meager statements were of such qualitative nature as to provide an adequate foundation for admission into evidence of the carbon copy and the implicit finding by the jury that the original of the letter was actually mailed is, of course, governed by Arkansas law.[4] The question brings

---

3. For the protection of the debtor, the creditor should give consideration to sending the notice required by the Code by registered mail, as plaintiff did in giving the notice of the sale of the truck, so that there is no evidentiary question at trial as to whether the letter was sent. It may be that the discrepancy in plaintiff's practice of sending one notice by registered mail and the other by regular mail, had it been brought to their attention, would have persuaded the jurors to find that plaintiff did not send the notice of the sale of the log loader as defendants contend. However, following the teachings of the Arkansas Supreme Court in *Baber*, we cannot say as a matter of law that notice was not "reasonable" merely because it was sent by regular, rather than registered, mail.

4. The jury verdict for the plaintiff necessarily rests upon an affirmative response to the court's instruction that they could find for the plaintiff only if they found as a fact that plaintiff had sent to the defendants reasonable notification of the time and place of the sale of the log loader. The court's instruction was as follows:

"A party seeking to recover a deficiency judgment, that is, a judgment for the difference between the contract debt and the amount realized from a sale of the collateral, has the burden of proving by a preponderance of the evidence that:

(1) Reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended dis-

into play reliance upon office custom or practice in mailing to show "reasonable notification." Our attention has not been directed to any Arkansas case and independent research has disclosed none that has specifically decided the circumstances in which such custom and practice can support a finding that a particular letter was mailed.

The most analogous Arkansas case is Dengler v. Dengler, 196 Ark. 913, 120 S.W.2d 340 (1938). There the evidentiary problem was whether defendant's testimony that she personally mailed a particular letter was sufficiently precise to warrant a presumption that the letter was received. Of importance here is the fact that the tenor of the Arkansas Court's approach to the problem was cautiously to require clear proof of all the facets of a proper mailing, i. e., proper stamping, addressing and posting.[5] Moreover, the Arkansas Court's view of this type of evidence is clearly matched by its zealous protection of the debtor under Ark.Stat. § 85–9–504(3) in *Barker* and *Norton*, supra. We therefore are constrained to approach this question with the narrow view of *Dengler*, that "the technicalities that make for justice may not be casually disregarded." 120 S.W.2d at 345.

As shown by Annotations 25 A. L.R. 9, 13, supplemented at 85 A.L.R. 541, 544, and 30 Am.Jur.2d Evidence § 1119, the weight of authority holds the evidence here presented to be insufficient due to the failure to call the mailclerk to verify either that he mailed this particular letter or at least that it was his custom to mail such letters.[6] Thus if Arkansas were to adopt the "majority rule," reversal would here be required.

---

position of the collateral is to be made was sent to the debtor.

(2) The sale of collateral was made in a commercially reasonable manner.

If you find from the evidence in this case that the plaintiff has failed to prove either of these elements, then the law presumes that the collateral has a value equal to the amount of the indebtedness, and you should find for the defendants as to such deficiency judgment."

5. We recognize that *Dengler* involved a presumption of receipt while Ark.Stat. § 85–9–504(3), as amplified by §§ 85–1–201(26), (38), makes it sufficient to prove "sending" the notice *without proof of its receipt.* But § 85–1–201(38) defines "sending" a notice as "to deposit in the mail * * * with postage or cost of transmission provided for and properly addressed * * *." Thus the elements required by the Code to prove "sending" a notice are virtually identical to those required by *Dengler* to support a presumption of receipt.

6. Our research reveals but one case in which there were the dual aspects that proof of sending was sufficient without receipt and sending was sought to be proven by office custom. The Customs Court there held the evidence to be insufficient for failure to call the mailclerk to verify either his actual compliance with the custom or his invariable compliance with the custom the executive had described. Orlex Dyes & Chemicals Corp. v. United States, 168 F.Supp. 220 (Customs Ct. 1958). The bulk of the cases involve the presumption of receipt, see note 4 supra. The majority of those cases require the testimony of the mailclerk either that he mailed the precise letter handed him by the executive or that he emptied the mail tray on the day in question and properly mailed its contents. Birmingham News Co. v. Moseley, 225 Ala. 45, 141 So. 689 (1932); Henry H. Cross Co. v. Bell Oil & Gas Co., 129 Okl. 188, 263 P. 1105 (1928); Executive Committee, etc. v. Fidelity & Columbia Trust Co., 273 Ky. 715, 117 S.W.2d 958 (1938); Cook v. Phillips, 109 N.J.L. 371, 162 A. 732 (1932); Harrison v. Welsh, 295 Pa. 501, 145 A. 507 (1929); Lieb v. Webster, 30 Wash.2d 43, 190 P.2d 701 (1948); Frank v. Metropolitan Life Ins. Co., 227 Wis. 613, 277 N.W. 643 (1938). Other decisions hold it to be error that the mailclerk did not testify to his compliance with the custom, but fail to specify what that testimony must entail to show compliance. Kars v. Knauf, 13 Ill.App.2d 219, 141 N.E.2d 410 (1957); Texas Employers Ins. Ass'n v. Wermske, 162 Tex. 540, 349 S.W.2d 90 (1961). Still other cases require the mailclerk to testify himself as to his customary duties in handling the mail in order to prove the custom. United States v. Wolfson, 322 F.Supp. 798, 813–814 (D.Del.1971); Peirson-Lathrop Grain Co. v. Barker, 223 S.W. 941 (Mo.App.1921).

Conversely, it may be that the Arkansas Court would share, as we do, Professor McCormick's view that testimony of the mailclerk would only be cumulative since, considering the modern volume of corporate correspondence, he could not be expected to remember posting a particular letter or emptying the mail tray on a particular day and probably could only reiterate the executive's description of the office practice. McCormick on Evidence, § 162, p. 343 n. 13 (1954). However, even if Arkansas law were in accord with the "minority view," a jury finding that clerical personnel performed their duties in properly posting the mail would be permissible only if there were clear testimony by the executive as to the customary practice in his office and his actions in compliance therewith.[7] The problem in this case, however, is that plaintiff's sole witness on this point, Dillinger, proffered no description of the office practice from which a jury properly could determine whether his actions were in accord with it. He gave no indication as to who customarily did such basic acts as addressing, sealing, and stamping the envelopes and whether he could verify that he and his secretary had done such of those as was their customary duty before he signed the letter and placed it in the tray on his desk. His conclusory statement that "it went out in the normal course of business in my office as all mail does each day" is simply not enough. "The essential elementary facts may be shown by course of business properly proved, but an offer of [such] proof * * * must be directed to facts and not to mere conclusions * * *." Central Trust Co. v. City of Des Moines, 205 Iowa 742, 218 N.W. 580, 583 (1928). While the plaintiff may "show the essential facts constituting transmission by mail by showing the course of business, it failed because there is no evidence in the record as to what this office routine may have been." Forrest v. Sovereign Camp, W.O.W., 220 Iowa 478, 261 N.W. 802, 804 (1935). "That may be rather technical but the appellee relies upon a presumption which does not arise, unless the evidence itself discloses" the basic facts underlying it. Dengler v. Dengler, 120 S.W.2d at 343.

Accordingly, whichever view Arkansas might be deemed to follow, we are constrained to hold that the evidence was not adequate to support the requisite jury finding that notification was placed in the United States mail.

In summary, we affirm the judgment of $10,001.42 as the deficiency due on the truck transaction. The remainder of the judgment, $8,507.31, is vacated and the claim for the balance due on the Barco Log Loader is remanded to the district court for another trial. One-half of the costs of printing the appendix and briefs shall be taxed against the plaintiff and one-half against the defendants.

---

7. The decisions subscribing to the "minority view" require the executive to describe his office custom and his complying acts up to handing the letter to the mailclerk, Prescott, Wright, Snider Co. v. City of Cherryvale, 134 Kan. 53, 4 P.2d 457 (1931); Prudential Trust Co. v. Hayes, 247 Mass. 311, 142 N.E. 73 (1924), or placing the letter in the outgoing mail, Citizens Bank & Trust Co. of Middlesboro, Ky. v. Allen, 43 F.2d 549 (4th Cir. 1930), cert. den., 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561 (1931); Myers v. Moore-Kile Co., 279 F. 233 (5th Cir. 1922) (Texas law, but see Texas Employers Ins. Ass'n v. Wermske, supra note 6); All States Trailer Co. v. American Ins. Co., 234 F.2d 783 (7th Cir. 1956) (Illinois law, but see Kars v. Knauf, supra note 6); Crissey v. State Highway Commission, 147 Mont. 374, 413 P.2d 308 (Mont.1966). Some cases even allow a jury to find that a particular letter was mailed solely from evidence that (1) the business regularly mailed numerous such notices of this sort upon a certain event which occurred in the particular case, and (2) that the particular copy was found where it would have been filed if the original had been mailed pursuant to that custom. Mohr v. Universal C.I.T., 216 Md. 197, 140 A.2d 49 (1958); cf. Farmers Ins. Exchange v. Taylor, 193 F.2d 756 (10th Cir. 1952) (Oklahoma law, but see Henry H. Cross Co. v. Bell Oil & Gas Co., supra note 6).

STEPHENSON, Circuit Judge, concurring, with whom MATTHES, Chief Judge, and BRIGHT, Circuit Judge, join.

In concurring I add the comment that the issue here, which has occupied the busy time of the trial court and this court, should have been disposed of by the parties prior to trial through routine discovery and at the very latest during pretrial.