## FIRST NAT. BANK OF CLAREMORE v. BRYAN et al.

No. 16057—Opinion Filed Nov. 8, 1926.

Rehearing Denied March 8, 1927.

1. **Banks and Banking—Cancellation of Worthless Stock in Reorganization of Failed Bank as Conversion — Owner's Right to Nominal Damages.**

Where, in a reorganization of a failed national bank, the stock certificates of B., conceded to have been worthless, are canceled without his knowledge or consent, such cancellation constitutes a conversion for which B. may recover nominal damages.

2. **Same—Value of Stock Subsequently Created not Recoverable as Damages.**

Where, in such case, it is shown by the evidence that new certificates were issued in lieu of the canceled certificates upon payment into the bank of the par value and an additional 20 per cent. of the par value to create a surplus, B. cannot, by exercising the option provided in the second subdivision of section 5999, C. S. 1921, recover, as damages for such conversion, the value of the shares created subsequent to the conversion.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Rogers County; C. H. Baskin, Judge.

Action by First National Bank of Claremore against W. W. Bryan. Judgment for defendant on his cross-petition, and plaintiff appeals. Reversed.

Holtzendorff & Holtzendorff, Rainey & Flynn, and Calvin Jones, for plaintiff in error.

Robson & Bayless, for defendant in error.

Opinion by RAY, C. In August, 1922, the First National Bank of Claremore, plaintiff in error, plaintiff below, being unable to meet its obligations, closed its doors and a national bank examiner took charge of its assets. A reorganization was effected, and the bank opened for business December 16, 1922. In order to effect the reorganization without an assessment upon the stockholders, the outstanding certificates of capital stock were canceled and new stock issued to new subscribers upon payment of the par value and an additional 20 per cent. of the par value to create a surplus. Approximately $185,000 of the bank's paper was charged off, and, as an inducement for the reopening of the bank, a number of depositors contributed 35 per cent. of their deposits. The paper charged off was to be held by the bank as a separate and special fund for the benefit of the old stockholders and depositors. At the time the bank was closed W. W. Bryan, defendant in error, defendant below, was the owner and holder of 45 shares of the capital stock of the bank of the par value of $4,500, and was also indebted to the bank in the sum of about $2,900, evidenced by two notes held by the bank. These notes were among those charged off and held in the separate fund for the benefit of the old stockholders and depositors. In February, 1923, the bank commenced this suit against W. W. Bryan to recover on the two notes. Bryan filed answer and cross-petition, in which he admitted the execution of the notes, and alleged that, at the time of the execution of the notes, he deposited with the bank, as collateral security, certificates representing 25 shares of the bank's capital stock, and that the bank had wrongfully converted the same to its own use and benefit, without his knowledge or consent; that the 25 shares were of the value of $3,750. He prayed judgment against the bank for that sum for the wrongful conversion. The bank, by suitable reply, joined issue on the allegations of the cross-petition. After issues were joined, and before trial, Dr. S. A. Swift was appointed receiver for the special fund held by the bank for the benefit of the old stockholders and depositors, and was substituted as party plaintiff. The jury returned two verdicts, one in favor of the receiver and against the defendant, W. W. Bryan, for the amount of the notes sued on, and the other in favor of the defendant W. W. Bryan, and against the First National Bank in the sum of $3,500 for the wrongful conversion of the 25 shares of the capital stock. On these verdicts judgment was entered. The First National Bank has appealed.

No question is raised as to the judgment in favor of the receiver and against the defendant W. W. Bryan. The evidence discloses that the bank examiner understood that the defendant Bryan had delivered to him the certificates representing the shares

held by Bryan for cancellation. He so testified. The defendant, Bryan, testified that he delivered to the bank examiner 20 shares for cancellation, but refused to deliver the certificates held by the bank unless he was relieved from liability on the notes. The verdict of the jury necessarily included the finding that the certificates representing the 25 shares here in controversy, were not delivered for cancellation and that the cancellation of these certificates and the issuance of new certificates to other purchasers was without the consent of the defendant Bryan.

At the trial the bank contended that the proper measure of damages was the value of the stock at the time of the conversion, while the defendant Bryan contended that under subdivision 2 of section 5999, C. S. 1921, he was entitled to recover the highest market value of the property at any time between the conversion and the verdict, without interest, at his option. This case was tried about 16 months after the reorganization. The defendant offered evidence to show that the shares of the par value of $100 were worth approximately $150. When objection was made to the introduction of that evidence, counsel for the defendant stated that, in order to secure a ruling of the court as to the proper measure of damages, he would agree that at the time the certificates were canceled the shares were worthless. The evidence was admitted over the objection of the plaintiff bank, and the court instructed the jury that, if they found from the evidence that the certificates were canceled by the bank, or with its permission, without authority of the defendant Bryan to do so, the same would in law be a conversion of the property of the defendant by the bank; and if they found that the defendant Bryan had prosecuted his action for the conversion of the stock with resaonable diligence, the defendant would be entitled to recover from the bank the highest market value of the shares at any time between the conversion and the verdict without interest. The question here for decision is, assuming that the cancellation of the certificates by the bank was a wrongful conversion of the defendant's property, Was the defendant's detriment, caused by the wrongful conversion, to be determined by the value of the shares at the time of the conversion, with interest, or by the highest market value at any time between the conversion and the verdict, without interest, at the option of the defendant?

Section 5999, Id., is as follows:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First. The value of the property at the time of the conversion with the interest from that time; or,

"Second. Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and,

"Third. A fair compensation for the time and money properly expended in pursuit of the property."

If it be assumed, as contended by the defendant Bryan, that he prosecuted his claim with reasonable diligence, then the question is, Can it be said, as a matter of law, that the detriment suffered by the wrongful conversion of the defendant's property was the highest market value of the shares of stock at any time between the wrongful conversion and the verdict, without interest, without regard to the detriment actually suffered?

The act of the old board of directors in canceling the certificates constituted the conversion complained of. The certificates being valueless the defendant Bryan suffered no actual detriment at the time of the conversion. He was awarded as damages a sum approximating the value of the shares at the time of the verdict. That value was created subsequent to the conversion by the new certificate holder paying into the bank the par value and 20 per cent. of the par value, in addition to creating a surplus, and the successful management by the new organization. It being conceded, as above stated. that the stock was worthless at the time of conversion, the contention of the defendant Bryan, when reduced to its last analysis is, not that he suffered detriment by the conversion. but that he suffered detriment to the extent of $100 per share by the payment into the bank of that amount by the new subscriber; that he suffered detriment to the extent of 20 per cent. of the par value when that amount was paid into the bank by the new subscriber to create a surplus, and that he suffered additional detriment by the successful management of the bank subsequent to the conversion. Of course it is not contended that he was actually damaged to that extent, or at all. The contention is that by the exercise of the option provided in subdivision 2 of section 5999, the law awards him that sum without regard to actual detriment suffered, notwithstanding the conversion and subsequent organization relieved him of the liability of

a 100 per cent. assessment. Is such a judgment in contemplation of the statute? Section 5999 is found in the chapter on damages, and must be construed with other sections in the same chapter. Section 5969 provides that any person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money which is called damages. Section 5970 defines "detriment" as loss or harm suffered in person or property.

Section 6013 provides:

"Notwithstanding the provisions of this chapter, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides, except in cases where recovery may be for exemplary damages and penal damages, and in sections 2871 and 2878 (5995, 6002)."

Section 6014 provides that damages must in any case be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to a sense of substantial justice, no more than reasonable damages can be recovered. Section 6015 provides that when a breach of duty has caused no appreciable detriment to the party affected he may only recover nominal damages.

These statutes on damages, other than exemplary or punitive damages, contemplate compensation for detriment suffered. Without detriment there can be no actual damage. In this case the defendant Bryan suffered no detriment for the reason that the shares were worthless at the time of the conversion, and would have remained worthless but for the $120 per share of the par value of $100 paid into the bank by the new stockholders. If section 5999 stood alone it might be argued with some degree of plausibility that it was the legislative intent that one who converts property of another to his own use and benefit should suffer such a penalty, but when considered with the other sections, which provide that damages must in all cases be reasonable, and when no appreciable detriment has been caused, only nominal damages may be recovered, the force of the argument is entirely destroyed. This was but a technical conversion committed by the bank officials who had reason to believe the certificates had been delivered for cancellation. The good faith of the new subscribers to the capital stock cannot be questioned. To one of ordinary knowledge of business affairs, but no expert knowledge of the banking business. it is not conceivable that men not involved in the bank's failure

could have been induced to enter into the reorganization for the purpose of making the failed institution a going concern if they had reason to believe that one of the old stockholders, whose unpaid notes had contributed to the failure, would stand on an equal footing with them without contributing a similar sum toward the reorganization.

We think it was not the legislative intent that one whose valueless property has been technically converted to the use of another could, by the exercise of the option provided in the second subdivision of section 5999, recover the value created subsequent to the conversion. This view is sustained by the Supreme Court of the state California in the case of Lightner Mining Co. v. Lane, 120 Pac. 771, where it was held:

"The general rule of damages in tort is declared to be 'the amount which will compensate the injured party for all the detriment proximately caused thereby. whether it could have been anticipated or not.' * * * For the wrongful conversion of personal property, the damage allowed is its value 'at the time of the conversion,' with interest, or, if 'the action has been prosecuted with reasonable diligence,' the highest market value at any time between the conversion and the verdict, without interest, at plaintiff's option. Section 3336. Treating the case as one for the conversion of chattels. the conversion was complete when the defendants had mined the ore and mingled it with ore from their own mine. Its value at that time would not include the cost of milling. No evidence was given as to the cost of mining alone. The subsequent 'highest market value', referred to in the second clause of section 3336, ordinarily means the subsequent value of the thing in the condition it was in at the time of the conversion. It would not include a value added to it by reason of an improved condition given to it by the defendant after conversion."

The judgment is reversed, with directions to vacate the judgment in favor of the defendant Bryan against the First National Bank and grant the bank a new trial.

By the Court: It is so ordered.