SANDOR PETROLEUM CORPORATION
et al., Appellants,

v.

Tom S. WILLIAMS, Appellee.

No. 3418.

Court of Civil Appeals of Texas.

Eastland.

Jan. 30, 1959.

Rehearing Denied March 6, 1959.

Hayden C. Covington, Brooklyn, N. Y., McMahon, Smart, Sprain & Wilson, Abilene, for appellants.

Perkins, Bezoni & Kirwan, Midland, for appellee.

COLLINGS, Justice.

This suit was brought by Tom S. Williams against Sandor Petroleum Corporation and Alec J. Sabo for damages for the alleged conversion of two certificates of corporate stock. It was alleged that the conversion was accomplished by a corporate bylaw passed after the issuance of the stock to Williams resulting in the cancellation of his original stock certificates, issued without restriction as to their sale or transfer, and substituting in lieu thereof a certificate with restrictions concerning sale and transfer. The case was tried before a jury which found that Williams, after November 19, 1955, and prior to the issuance of stock certificates numbers four and eight of Sandor Petroleum Corporation, contributed money or service to the corporation and that the corporation in consideration thereof issued and delivered to him the said stock certificates and recognized their validity prior to the fixing of any restrictions thereon; that the act of defendants in cancelling Williams' two stock certificates and in amending the bylaws of the corporation by making certain restrictions relative to the sale of the stock, constituted a conversion of said stock. Based upon the verdict, judgment was entered for Williams and against the defendants for the sum of $27,-500. Sandor Petroleum Corporation and Alec J. Sabo have appealed.

Appellants urge points in which it is contended that the court erred in overruling their motions for a directed verdict and for judgment non obstante veredicto. They contend that the consideration for the issuance of stock certificates numbers four and eight was inadequate in that said certificates were not issued for money paid to, labor done for, or property actually delivered to the corporation, as required by law, and that the certificates were void. We cannot agree with this contention.

The evidence shows that certificates numbers four and eight were issued to Williams for a good and valuable consideration. The Sandor Petroleum Corporation was organized by Alec J. Sabo, his wife, Evelyn Sabo, Hayden C. Covington and Tom S. Williams. The corporation was capitalized for 25,000 shares of no par value stock with a fixed value of $1 per share. Appellee Tom S. Williams subscribed for and was issued stock certificates numbers four and eight, each of which was for 1,250 shares. At the time the corporation was formed, its original assets, contributed by Sabo, consisted of oil and gas leases on about 1,000 acres in a checker board spread covering three sections of land in Upton County. It was thought advisable, however, to secure other leases to complete the spread. As a part of the consideration for appellee Williams' stock, he undertook to help obtain these outstanding leases. It is undisputed that he did obtain and assist in obtaining certain outstanding leases for the corporation before his stock was issued. There was evidence to the effect that the corporation received and accepted legal services rendered by Williams of the value of $3,950 and that he expended $1,250 in money in behalf of the corporation. The jury found upon sufficient evidence that appellants accepted such services and money from Williams in consideration for stock certificates numbers four and eight and recognized the validity of the certificates. Article 2.16, Texas Business Corporation Act, V.A. T.S., provides that in the absence of fraud

the judgment of the Board of Directors as to the value of consideration received for shares of stock shall be conclusive. There is no evidence of any fraud on the part of Williams. Under the facts shown, and in the absence of any fraudulent concealment or overreaching, it cannot be said that the issuance of the stock certificates was a void transaction. 10-A Tex.Jur. 120, 121; Article 12, § 6, Texas Constitution, Vernon's Ann.St. Appellants cannot now question the adequacy of the consideration for the issuance of the stock certificates numbers four and eight. McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171.

The evidence shows that the Sandor Petroleum Corporation was organized under the Texas Business Corporation Act of 1955. Its articles of incorporation were signed by the original incorporators on November 19, 1955, and its charter was issued on December 2, 1955. There was no provision for a restriction on the sale of its stock except a requirement that the transfer of stock must be made on the stock transfer books of the corporation.

On February 18, 1957, Williams was the owner and holder of stock certificates numbers four and eight representing 2,500 shares of capital stock of appellant corporation, free of options to purchase, pre-emptive rights or restrictions on its sale and transfer. A disagreement arose between Williams and Sabo concerning the management of the corporation and Williams offered his stock for sale. He first offered the stock to Sabo by letter dated January 22, 1957, and later offered it to Hayden C. Covington, an officer and director of the corporation. Both Sabo and Covington declined the offer. On January 8, 1957, the board of directors of the corporation, consisting of Alec J. Sabo, Evelyn Sabo and Hayden C. Covington, met in a special directors meeting at Abilene, Texas, and amended the corporation bylaws so as to restrict the sale and transfer of stock and give the corporation first option to

purchase any of its stock offered for sale at a price to be fixed by appraisers. On the same day the corporation through its secretary notified Williams by telegram of the amended bylaw.

Neither Sabo nor Sandor Petroleum Corporation made any effort to purchase Williams' stock until he threatened to take action for its conversion. They then made an offer to buy the stock, but the offer was withdrawn and Williams was advised that he would have to proceed according to the amended bylaws if he wished to sell. On February 18, 1957, appellants cancelled Williams' stock certificates numbers four and eight and notified him by letter of their action. They substituted certificate number nine which referred to on its face and set out on its back a copy of the amended bylaw. On the same date appellants gave notice to prospective buyers of Williams' stock that they would not recognize a sale, or transfer the stock on its books unless the restrictions contained in the amended bylaw were first complied with. Williams refused to accept certificate number nine and returned it to the corporation. The corporation thereafter returned the new stock certificate to Williams and he again tendered it to them at the trial.

Appellants urge points in which it is contended that the passage of the bylaw restricting the sale and transfer of previously unrestricted stock and the steps taken by appellants to carry out the provision of the bylaw did not constitute a conversion of Williams' stock certificates and that the court erred in so holding. As grounds for this contention appellants urge that what they actually did was only to issue a new certificate to Williams in lieu of the old ones in compliance with a valid bylaw, and that Williams, in effect, agreed to the exercise of this authority by the board of directors of the corporation when he signed the original bylaws including Article XI thereof providing for further amendments. It was further urged that said bylaw and

the steps taken to enforce it were specifically authorized by subds. A, B(1) and (3), and E of Article 2.22 and Article 2.23 of the Texas Business Corporation Act. Appellants contend that the court erred in holding as a matter of law that the bylaw creating in favor of the corporation a first option to purchase any of its stock offered for sale and providing for its appraisal was invalid.

■ Generally speaking, corporate shares of stock are property which may be freely sold and delivered. However, reasonable restrictions upon the sale and transfer of shares may be imposed by agreement between stockholders, by statutory enactment and by corporate charters or bylaws or amendments thereto. 18 C.J.S. Corporations § 391, p. 921.

■ The articles of incorporation of the Sandor Petroleum Corporation provided for the formation of a corporation, the purpose of which was to engage in the oil and gas business. The articles also provided for an aggregate of 25,000 shares of common stock with no par value. There was no provision in the articles of incorporation, in the original bylaws or in the shares for a restriction on the sale or transfer of the stock except a provision that a transfer must be made on the stock transfer books of the corporation. Williams thus acquired 2,500 shares of Sandor Petroleum Corporation stock free of any charter limitation on its sale or transfer. His ownership of the stock and his right to sell or transfer it was a vested right and interest, subject only to the right of the corporation to manage and regulate its affairs under the laws of this state and under the provisions of its charter and bylaws.

Appellants contend that Article 2.22 and 2.23 of the Texas Business Corporation Act of 1955, Vol. 3-A, V.A.T.S., under which appellant corporation was created, specifically granted authority to the corporation, by articles of incorporation or

bylaws, to impose the restrictions here complained of, one of which was to prevent the sale of such previously unrestricted stock without first giving the corporation an opportunity to purchase same at a price to be fixed by appraisers. Article 2.22 provides in part as follows:

"A. Any corporation may impose restrictions on the sale or other disposition of its shares and on the transfer thereof, which do not unreasonably restrain or prohibit transferability, if each such restriction is expressly set forth in the articles of incorporation or bylaws of the corporation and is copied at length on the face or so copied on the back and referred to on the face of each certificate representing shares, to the transfer of which the restriction applies.

"B. In addition to any other restrictions which may reasonably be imposed on the transfer of its shares by any corporation, in accordance with the foregoing provisions of this Article, any of the following restrictions may be so imposed:

"(1) Restrictions reasonably defining pre-emptive or prior rights of the corporation or its shareholders of record, to purchase any of its shares offered for transfer."

Article 2.23 provides:

"A. The initial bylaws of a corporation shall be adopted by its board of directors. The power to alter, amend, or repeal the bylaws or to adopt new bylaws shall be vested in the shareholders, but such power may be delegated by the shareholders to the board of directors. The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation. Acts 1955, 54th Leg., p. 239, ch. 64."

Article 2.22 was in effect when the stock in question was issued to Williams. At that time there was no provision restricting the sale or transfer of stock in the charter or bylaws of the Sandor Petroleum Corporation. Of course no such restriction was, or could have been, "copied at length" or "referred to" on the face of the stock certificates as required by Article 2.22.

We cannot agree with appellants' contention that Articles 2.22 and 2.23 authorize a corporation to amend its bylaws in such manner as to provide for cancellation of previously issued unrestricted stock certificates and the substitution in lieu thereof of certificates which cannot be sold without first offering to sell to the corporation at a price to be fixed by appraisers. Such a restriction on previously unrestricted stock would unreasonably restrain and prohibit its sale and transfer and could result in depriving the owner of the full value of his stock. We do not believe that such a restraint is contemplated by Article 2.22. We do not hold that a restriction merely giving a corporation, such as Sandor Petroleum Corporation, first option to purchase its previously unrestricted stock is an unreasonable restraint on its sale and transfer. We do not hold that the additional provision that the option price shall be set by appraisers is an unreasonable restriction except in regard to unrestricted stock already issued. These questions are not before us for determination. But, an entirely different question is presented when the holder of such unrestricted stock is by an amended bylaw denied the right to demand the full price which could be had on the open market. That is the question in this case. Appellants have cited no case and we have not been able to find one holding such a restriction on previously unrestricted stock to be valid. The original stock certificates held by Williams constituted a contract between him and the corporation. Williams had a vested property right in the value of his stock. The right of the corporation to regulate and to manage its affairs does not include the power to impair that vested contractual right and to take from holders of unrestricted stock

the value of their stock. The amended by-law of the Sandor Petroleum Corporation so restricting the sale of its previously unrestricted stock was, therefore, unauthorized and invalid in so far as it denied appellee's right to sell at a price which he could have secured on the open market.

■ We likewise cannot agree with appellants' contention that Article XI of the original bylaws of the corporation constitutes an agreement by Williams for the directors to adopt a bylaw providing for the cancellation of his unrestricted stock and a substitution in lieu thereof of stock which could only be sold at a price to be fixed by appraisers. Article XI to which Williams agreed does provide that the bylaws may be "altered, amended or repealed and new bylaws adopted by the Board of Directors * * *," but this bylaw should be interpreted in light of the existing law and the articles of incorporation. Neither the law nor the articles of incorporation are consistent with a restriction depriving the holder of previously unrestricted stock of its full value.

■■ We also overrule appellants' contention that, regardless of whether or not the bylaw in question was invalid, there was no conversion of Williams' stock certificates because neither he or any assignee of his ever presented said certificates to the secretary of the corporation for transfer and no showing was made that the corporation refused to transfer said certificates. Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another to the alteration of their condition or the exclusion of an owner's rights." 89 C.J.S. Trover & Conversion § 1, p. 531. The essence of conversion of property is the wrongful deprivation of it to the owner. Conversion may be direct or constructive. 42 Tex.Jur. 508. The evidence shows that in accordance with the bylaw restricting the sale of non-restricted stock certificates previously issued to Williams, the corporation can-

celled his certificates numbers four and eight and substituted in lieu thereof certificate number nine containing the restrictions on sale and transfer. This was an unauthorized alteration of the condition of Williams' stock. Actually the cancellation of his original shares was in effect a taking of his stock and was an unauthorized and unlawful act amounting to conversion. First State Bank of Claremore v. Bryan, 124 Okl. 106, 254 P. 34. The new stock certificate was enclosed in a letter to Williams from the corporation advising him of the action taken. The letter stated in part: "Please return original certificates number four and eight which are cancelled." The evidence further shows by letters from the corporation to Williams that unless the procedure prescribed in the amended bylaw restricting the sale and transfer of stock was complied with no transfer would be recognized or entered upon the books of the corporation. Williams had been negotiating with prospective purchasers of his stock. Appellants by letter advised such prospective purchasers that the corporation would not recognize a sale of Williams' stock and would not enter a transfer on its books unless the requirements of the amended bylaw were first complied with. They were wrongfully asserting and exercising an authority over a right in the stock which was adverse to and destructive of the vested property right and interest of Williams therein.

We cannot agree with appellants' contention that there was no showing that the corporation refused to transfer Williams' stock certificates. It is true, that neither Williams, nor any assignee of his, ever presented the certificates for transfer. To have done so would have been a useless thing since the corporation had already advised Williams and prospective purchasers of his stock that such a transfer would not be recognized or entered upon the books of the corporation. Under these circumstances a demand and a refusal was not necessary to constitute a conversion. It was shown that a demand would have been

useless or unavailing if it had been made. 9 Tex.Jur. (Ten Year Sup.) 449; 89 C.J. S. Trover & Conversion § 57 p. 561.

The judgment of the trial court is in all things affirmed.

WALTER, J., disqualified and not sitting.