SAM D. JOHNSON, Circuit Judge.
John Dahl Construction Co., Inc., (Dahl) intervened in a suit brought by South Central Livestock Dealers, Inc., et al., (the Original Plaintiffs) against Security State Bank of Hedley, Texas, (the Bank) for the Bank’s wrongful offset of money held in trust by Donley County Feedlot, Inc., (the Feedlot) in an account at the Bank. The district court rendered summary judgment for the Bank, but this Court reversed and remanded. After remand, the Original Plaintiffs settled with the Bank, but Dahl proceeded to trial. The jury awarded Dahl all its claimed actual damages plus $25,000 in exemplary damages. Modifying only the prejudgment interest awarded by the district court, we affirm the district court judgment for Dahl.
I. The Facts
The Feedlot was in the business of fattening for slaughter cattle that belonged to its customers and selling the cattle to meat packers. It was a “custom feedlot,” that is, it segregated each customer’s cattle in separate pens. The Feedlot would fatten the cattle for between 120 and 190 days, depending on the initial size and sex of the animals. During this period, the Feedlot kept track of the amount of feed that each customer’s cattle consumed and the veterinary bills incurred by each customer’s cattle. At the end of the feeding period, the Feedlot would sell the fattened cattle to a packing house. It would then remit to the customer whose cattle it had sold the proceeds of that sale less any feed and veterinary bills that customer had incurred, but not paid.
The Feedlot banked at Security State Bank of Hedley, Texas. Initially, the Feedlot had only one account at the Bank. Later, when the Feedlot began to have difficulty keeping its funds and those of its cattle customers separate, the Feedlot and the Bank agreed that the Feedlot needed another account. The Feedlot opened another account, known as the cattle account, to go along with its original, or regular, account. The Feedlot used the cattle account as a custodial account for the sale proceeds from its customers’ cattle. The Feedlot used the regular account for its own operating expenses and salaries. When the Feedlot sold cattle for a customer, it would deposit the proceeds in its cattle account. It would then write a check from the cattle account to the regular account to cover the feed and veterinary bills associated with the cattle it had sold. Finally, the Feedlot would write a check on the cattle account to the customer for the net proceeds of the cattle sale. At one point, the Bank severely criticized the Feedlot for overdrawing the cattle account because that account contained other people’s money.
The Feedlot also had a number of outstanding loans from the Bank. In July of 1974 the Bank took some drastic measures to protect itself against a possible default by the Feedlot on its loans. On July 12th the Bank offset the entire balance of the Feedlot’s regular account, $15,528, against the indebtedness the Feedlot owed the Bank. The Bank also dishonored $29,000 in checks drawn against the cattle account. The Bank took this action without notifying the Feedlot. Three days later, on Monday, the Bank persuaded the Feedlot’s vice president to renew a $172,000 note secured by the Feedlot accounts receivable. Then the Bank offset the entire $86,247 balance of the cattle account. This action gave rise to the instant suit. The Feedlot did not learn of the Bank’s offsets until Thursday, July 18th. The Bank later sequestered the Feedlot and obtained constructive possession of it. By early August, the Feedlot filed for bankruptcy.
*1059 The Original Plaintiffs, who were customers of the Feedlot, sued the Bank claiming wrongful offset of the cattle account and tortious interference with the contractual relations between the Feedlot and its customers. The district court gave the Bank a directed verdict on the grounds that it had the right to offset funds in the cattle account.
The Original Plaintiffs and Dahl successfully appealed. In South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas, 551 F.2d 1346 (5th Cir. 1977), this Court reversed the directed verdict and remanded the case for trial. Relying on a strikingly similar case, Steere v. Stockyards National Bank, 113 Tex. 387, 256 S.W. 586 (Tex.Com.App.1923, opinion adopted), Judge Gee set out the Texas law that the district court was to apply on remand. “Texas has long held that if a bank knows that deposits by a debtor in his own name are in fact held by him in a fiduciary capacity, then the bank may not apply [offset] such funds to the individual indebtedness of the debtor.” 551 F.2d at 1349. The Court went on to note that, “[I]t is the bank’s knowledge that the debtor has deposited in Iris' account funds belonging to another and thus held in a fiduciary capacity that precludes the offset.” Id. at 1350.
The Original Plaintiffs settled with the Bank before the trial on remand. Dahl did not. Instead, it won a complete and total victory at trial, from which the Bank now appeals. The jury first found that the Bank’s offset of funds in the cattle account was wrongful because the Bank had knowledge that funds in the cattle account belonged to parties other than the Feedlot. The jury also found for Dahl on another theory of liability, tortious interference with contractual relations. Finally, the jury found the Bank had acted negligently in offsetting funds from the cattle account. Thus, the jury found the Bank liable on all three of the plaintiff’s theories. The jury found that the Bank’s wrongful acts had damaged Dahl in the amount of $63,595.77. This figure represents the proceeds, after deductions for feed and veterinary bills, from the Feedlot’s sale of Dahl’s cattle. The parties did not dispute that the Feedlot had deposited the sale proceeds from Dahl’s cattle in the cattle account, and that the Bank had offset around $86,247 from the cattle account. The jury further found that the Bank had acted wantonly and maliciously. To punish the Bank, the jury awarded Dahl $25,000 in exemplary damages.
The district court enteréd judgment for Dahl. The judgment held the Bank liable under the theories of wrongful offset and tortious interference, but not negligence for the full $63,595.77 that the jury found in damages. The trial court awarded prejudgment interest on this sum from the date of offset in July of 1974. Finally, the district court entered judgment on the jury’s finding of $25,000 in punitive damages.
II. Did the district court err in entering judgment on the jury’s finding of liability under the theory of wrongful offset?
The Texas law on a bank’s liability for wrongful offset is clear. “[Knowledge upon the part of a bank that deposits made by a debtor in his own name belong to a third person absolutely precludes the bank from applying such funds to the individual indebtedness of the depositor to it.” Steere v. Stockyards National Bank, 113 Tex. 387, 256 S.W. 586, 590 (Tex.Com.1923, opinion adopted), quoting 13 A.L.R. 324. See also National Indemnity Co. v. Springbranch State Bank, 348 S.W.2d 528, 529, 8 A.L.R.3d 268 (Tex.1961). Furthermore, this is .the law of the case that this Court set forth in the opinion before remand. See South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas, 551 F.2d 1346 (5th Cir. 1977). Here the jury found that the Bank’s offset was wrongful because the Bank knew, or should have known, that funds in the Feedlot’s cattle account belonged to parties other than the Feedlot. This Court can reverse the judgment only if the district court erred in not granting the Bank’s motions for directed verdict. Reimer v. Short, 578 F.2d 621, 628 (5th Cir. 1978). The district court did not err in denying the *1060 Bank’s motion for directed verdict if there was evidence that the Bank had knowledge that the funds in the cattle account belonged to someone other than the Feedlot and that evidence was “of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions” about whether the Bank did have knowledge. Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).
The evidence at trial showed that the Bank had knowledge that the funds in the cattle account did not belong to the Feedlot. The evidence showed that representatives of the Feedlot and the Bank met and decided to open the cattle account for the specific purpose of keeping the Feedlot customers’ funds separate from the funds of the Feedlot. Furthermore, the president of the Bank at the time of the offset, Melvin Booth, testified that he knew that the Feedlot deposited in the cattle account funds from the sale of its customers’ cattle. Finally, there was evidence that when the Feedlot overdrew the cattle account, the Bank chastised it because the account held money belonging not to the Feedlot, but to its customers. The evidence supports the jury’s finding that the Bank wrongfully offset the funds in the cattle account because the Bank had knowledge that those funds did not belong to the Feedlot. Accordingly, the district court properly entered judgment for Dahl and against the Bank on the theory of wrongful offset.[1]
III. Did the trial court err in entering judgment on the amount that the jury found as damages caused by the Bank’s acts, $63,595?
The Bank contends that, as a matter of law, Dahl’s damages from the wrongful offset of the cattle account were less than the $63,595 net proceeds from the sale of Dahl’s cattle. At the time of the the time of the offset. At the time of the offset, there were $73,630 in outstanding checks written on the cattle account. This sum when added to the $63,595 owed to Dahl from the cattle account totals $137,-225. At the time of the offset, the cattle account contained only $86,247. Therefore, the Bank reasons, the offset could not have damaged Dahl in an amo,unt greater than that amount which bears the same proportion to $86,247 that $63,595 bears to $137,-225. The Bank makes the alternative argument that Dahl’s damages from the offset could not exceed $12,617, which is the amount in the cattle account at the time of the offset less the amount of checks written against the cattle account at that time.
This argument, that the offset could not have damaged Dahl in an amount greater than his proportionate share in the cattle account, finds some support in Steere v. Stockyards National Bank, 266 S.W. 531 (Tex.Civ.App.1924, writ ref’d n. r. e.), after remand from 256 S.W. 586. There, Graves was a livestock commission agent who sold livestock for shippers and remitted them the proceeds less his commission. Shortly before going bankrupt, the bank offset Graves’s debt to it against Graves’s account at the bank. Steere, the trustee for Graves, and the shippers sued to recover the amount in Graves’s account that the bank had offset. After remand from the holding of the Texas Commission of Appeals, which was discussed above, the Court of Civil Appeals rendered judgment against the bank in favor of the shippers in the amount of $14,268. The Court held that this amount of the shippers’ money that the bank had wrongfully offset was to be divided among the shippers in proportion to their claims against the account that the bank had offset. In this case, the Bank argues that Dahl can only recover its proportionate *1061 share of the $86,247 that was wrongfully offset.
Dahl counters the Bank’s argument very effectively, however. Dahl points out that the Bank argued to the jury that the wrongful offset, if any, did not cause damage in the amount of $63,595 because of the outstanding checks and claims of other customers of the Feedlot against the cattle account. Nonetheless, the jury found that $63,595 was needed to compensate Dahl for damages proximately resulting from the wrongful offset. In making this finding, the jury apparently accepted the testimony Dahl adduced to the effect that had the Bank not offset the cattle account and continued to let the Feedlot operate, Dahl would have been paid the full $63,595.
Texas law allows a plaintiff to recover for all losses proximately caused by the defendant’s conversion. Groves v. Hanks, 546 S.W.2d 638, 647 (Tex.Civ.App.—Corpus Christi 1976 writ ref’d n. r. e.). Wrongful offset is a subspecies of conversion, which is defined as an unauthorized exercise of the right of ownership over property belonging to another. See Sandor Petroleum Corp. v. Williams, 321 S.W.2d 614, 619 (Tex.Civ.App.—Eastland 1959, writ ref’d n. r. e.). Thus, while the Bank did not wrongfully offset $63,595 of Dahl’s funds, the Bank is nonetheless liable for $63,595 because its wrongful offset caused Dahl to lose that amount.
IV. Did the district court err in holding that Dahl, and not the Feedlot’s bankruptcy trustee, was the proper party to assert a wrongful offset claim against the Bank?
The Feedlot went into bankruptcy shortly after the Bank offset the cattle account. The Bank claims on appeal that the cause of action for wrongful offset vested in the Feedlot's bankruptcy trustee and that Dahl was not a proper party to bring this action. One elementary rule of bankruptcy, however, is that the trustee succeeds only to the title and rights in the property that the debtor possessed. 4A Collier on Bankruptcy ¶ 70.25 (14th ed.). The Feedlot’s trustee therefore would not have taken title to the funds in the cattle account even if the Bank did not offset those funds. Those funds belonged to Dahl and the Original Plaintiffs. The owner of property converted by another has a cause of action for conversion. Accordingly, the owner of funds wrongfully offset by a bank has a cause of action against the bank. Because the funds in the cattle account belonged to Dahl and not to the Feedlot, Dahl has a cause of action for their wrongful offset.
V. Did the district court err in allowing Mr. Clubb, the Feedlot’s financial officer, to testify that the Feedlot’s assets exceeded its liabilities by around $100,000 in July 1974?
Mr. Clubb was the financial officer of the Feedlot. The Bank objected to his testimony that the Feedlot’s assets exceeded its liabilities by around $100,000 at the time of the offset. The Bank objected on the grounds that Mr. Clubb’s testimony to that effect was unreliable opinion evidence of a layman. “[A]n owner is competent to give his opinion on the value of his property [under the Federal Rules of Evidence].” Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 698 (5th Cir. 1975). In Kestenbaum, a beer distributor testified about the value of his business’s goodwill. The district court admitted this testimony, and the Fifth Circuit affirmed, reasoning that Rule 702 of the Federal Rules of Evidence allowed the testimony. Rule 702 provides that, “[A] witness qualified as an expert by knowledge, skill, experience, training or education, may testify in the form of opinion or otherwise.” The Court in Kestenbaum noted that an opposing party can attack an owner’s opinion on value through cross-examination or independent evidence refuting the owner’s estimate. Id. at 699.
In this case, Mr. Clubb’s testimony about the excess of the value of the Feedlot’s assets over its liabilities is closely akin to the testimony of an owner of a business about that business’s value. The value of the Feedlot was, in large part, simply the *1062 excess of the value of its assets over the value of its liabilities. The financial officer of the Feedlot was a witness qualified to testify to value by knowledge and experience just as an owner is such a witness, and the district court did not err in allowing him to testify.
VI. Did the district court err in awarding Dahl prejudgment interest on the entire actual damages found by the jury?
Texas law freely allows the recovery of prejudgment interest under the equitable principle that one ought not to be able to use someone else’s money for a considerable period of time without paying anything for that use. See Phillips Petroleum Co. v. Stahl Petroleum Co., 569 S.W.2d 480, 485 (Tex.1978), quoting Phillips Petroleum Co. v. Adams, 513 F.2d 395 at 368 (5th Cir. 1975). See also Okemah Construction, Inc. v. Barkley-Farmer, Inc., 583 S.W.2d 458, 461 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) (“When a definite sum of money is determined to have been due and payable at a date certain prior to judgment, the legal rate of interest should be allowed thereon from such date to the date of judgment.”)
In this case, the Bank wrongfully offset Dahl’s funds in July of 1974, and the Bank has used those funds for its own benefit since that date. Equity, therefore, dictates that the Bank must pay for the use of those funds. But the question remains, how much of Dahl’s funds did the Bank wrongfully offset in July 1974. The Bank wrongfully offset $86,247 from the cattle account. All of this money, however, did not belong to Dahl. Dahl had a $63,595 claim against the cattle account and there were $73,630 of outstanding checks written against the cattle account. Thus, there were $137,225 in claims against the cattle account at the time of the offset. Dahl held 46.3% of these claims (46.3% is the proportion that $63,595 bears to $137,225). 46.3% of $86,247 in the cattle account is $39,932.36. This is the proportionate interest of Dahl in the cattle account that the Bank wrongfully offset, and this is the amount on which the Bank owes Dahl prejudgment interest from the date of the wrongful offset. Accordingly, this Court modifies the district court’s award of prejudgment interest on the entire $63,595, and allows prejudgment interest only on $39,-932.36.
VII. Did the district court err in entering judgment on the $25,000 punitive damages awarded by the jury?
The jury found that the Bank knew that it offset funds that did not belong to the Feedlot and that the Bank pursued a course of conduct designed to get the greatest percentage of the Feedlot’s assets for itself, without regard to the rights of others whose property was held by the Feedlot. The jury further found that the Bank acted maliciously and wantonly. Texas law allows the recovery of exemplary damages when the unlawful act warranting the actual damages was of a wanton and malicious nature. “Malice may be actual or implied. Implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse.” Courtesy Pontiac, Inc. v. Ragsdale, 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref’d n. r. e.).
The jury’s finding in this case authorizes an award of exemplary damages. The evidence adduced by Dahl supports those findings. The Bank knew that the Feedlot’s cattle account contained funds that did not belong to the Feedlot. The Bank cannot claim it had reasonable grounds for believing it was entitled to offset the cattle account because of the long-standing Texas law to the contrary. Booth, the Bank president, testified that he knew the offset would have a disastrous effect on the Feedlot and that the Bank’s acts could hurt Dahl and the other customers of the Feedlot. The district court properly entered judgment on the jury’s finding of $25,000 exemplary damages against the Bank.
The district court’s judgment is modified by reducing the amount on which the Bank *1063 must pay prejudgment interest to $39,-932.36; the remainder of the district court’s judgment is affirmed.
MODIFIED IN PART, AND AS MODIFIED, AFFIRMED.

. The Bank also claims the district court erred in entering judgment for the plaintiff on the grounds of tortious interference. We need not address this issue, however, because affirming the judgment on the wrongful offset basis of liability makes it unnecessary to determine whether the judgment was proper on another basis of liability. The jury also found for the plaintiff on a negligence theory, but the district court did not enter judgment on that theory. Again, we need not address the negligence theory of liability.