COWAN v. POWELL.

4-9590                                    243 S. W. 2d 373

Opinion delivered November 5, 1951.

Rehearing denied December 3, 1951.

*Carroll W. Johnston,* for appellant.

*Gordon & Gordon,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by the appellant, Geraldine Cowan, individually and as administratrix of the estate of Bill Cowan, to recover certain assets of the estate that were alleged to be in the possession of the appellee, Billie Faye Powell. Geraldine, the plaintiff, is Cowan's widow, and Mrs. Powell is his daughter by an earlier marriage. By his will, which the widow renounced, Cowan left a dollar to Geraldine and the rest of his property to his daughter. By her pleadings Billie Faye denied that she had possession of any assets of the estate and by cross-complaint asserted certain claims against Geraldine individually and as administratrix. Five major issues were developed at the trial, and in each instance the chancellor held that neither the widow nor the daughter should be required to surrender any property to the estate. The

complaint and cross-complaint were accordingly dismissed, and both litigants have appealed.

I. In May, 1948, about ten months before his death, Cowan opened a bank account in his daughter's name and deposited $5,000 to her credit. At Cowan's death the sum of $2,325.45 remained in the account, which the bank paid over to Billie Faye. The appellant contends that this money is an asset of the estate and should be paid to the administratrix. This contention is based on the fact that the bank account was carried in· the name of "Mrs. A. C. Powell, c/o Bill Cowan," and that all checks against the account were signed "Mrs. A. C. Powell by Bill Cowan." It is the appellant's theory that Cowan was merely carrying his own bank account in his daughter's name.

We agree with the chancellor's finding that the account belonged to Mrs. Powell. During her minority she had received $850 in payment of a judgment for personal injuries and had inherited $1,758.26 from her grandfather. Bill Cowan took charge of these monies for his daughter and acted somewhat informally as her guardian, investing at least part of the funds in his cotton buying business. It is a fair inference from the testimony that when Cowan deposited $5,000 in Billie Faye's name he intended it to be in settlement of his account as her guardian, and in any event the proof justifies a finding that a gift was intended and completed. Both Billie Faye and her husband testified that Cowan gave the deposit slip to her and told her that the money was hers. Billie Faye accepted the settlement or gift but asked her father to continue to invest the money for her as he had in the past. This proof amply supports the chancellor's conclusion that the account was Billie Faye's and not an asset of the estate.

By cross-appeal Billie Faye contends that the court should have held the estate liable for the difference between the original deposit of $5,000 and the amount that remained when Cowan died. But the proof is insufficient to sustain such a charge against the estate. Billie Faye concedes that she gave her father full power to

invest the funds as her agent. According to the testimony as abstracted, she has neither shown nor even attempted to show that any of the money was taken by Cowan personally or otherwise wrongfully spent, although all the canceled checks were available for her inspection and investigation. Her proof consists only of the fact that the initial deposit was $5,000 and that the account contained only about $2,300 when Cowan died. On this scanty proof the trial court correctly concluded that the burden of proving liability had not been met.

II. In 1946 Cowan bought a Chevrolet car and gave it to Billie Faye. The appellant now contends that this gift should be treated as an advancement and considered as part of the estate in the division between the widow and daughter. We find not a syllable in the testimony to indicate that Cowan, in giving his daughter a car, intended the gift to be in anticipation of what Billie Faye would receive upon his death. Yet, if the gift is to be held to have been an advancement, Cowan must have entertained that intention. *Holland* v. *Bonner,* 142 Ark. 214, 218 S. W. 665, 26 A. L. R. 1101. The doctrine of advancements is based upon the parent's supposed desire to treat all his children equally; so the applicability of the doctrine to a gift to an *only* child is evidently doubtful. But even if the doctrine be assumed to be applicable the proof shows that Cowan had promised his daughter a car during World War II and was finally able to obtain one as a Christmas gift in 1946. There is not the slightest indication that an advancement was intended.

III. Also in issue is another car, a Buick which Cowan bought and registered in his own name. The chancellor found that Cowan had given this car to Geraldine, but we think this finding contrary to the weight of the evidence. Several witnesses testified that Cowan had referred to the Buick as his wife's car, while about as many others testified that Cowan had referred to the car as his own. We attach little weight to such casual statements about a family vehicle. It is not disputed that Cowan paid for the car and took title in his own name. For Geraldine to overcome this *prima facie* proof it was necessary for her to show some act on Cowan's

part that amounted to a gift to her. Such evidence is wholly lacking. Her sole testimony on the point is this question and answer: "Q. They refer to a green Buick car. Whose car is that? A. Mine." In the absence of any proof whatever of conduct amounting to a gift we are not willing to say that a claimant may overcome unimpeached written evidence of the decedent's ownership by simply voicing a conclusion of law, "It's mine." The trial court's finding upon this issue must be set aside.

IV. Billie Faye insists that her stepmother has in her possession warehouse receipts representing seventeen bales of cotton owned by Cowan and that the negotiation of these receipts should be enjoined. The proof shows convincingly that Cowan bought the cotton before his death, that the bales are still in warehouses, and that the negotiable receipts have not yet been presented to the warehousemen. But the question of whether Geraldine has the receipts is purely one of credibility. Billie Faye testified that after her father's death she saw the receipts in Geraldine's purse, while Geraldine denies that she has or has ever had the receipts. Where the conflicting testimony of the two litigants is not otherwise corroborated we are guided by the chancellor's decision as to which witness to believe. *Leftwich* v. *Cash Lbr. Co.*, 214 Ark. 586, 217 S. W. 2d 357. We conclude that Billie Faye has not established her right to injunctive relief, but of course this conclusion is without prejudice to any action that may be taken on behalf of the estate if the receipts should be discovered.

V. The most difficult issue concerns the ownership of $1,606 in cash that was found in Cowan's safety deposit box. This money was contained in four envelopes, each bearing on the outside the appellee's name and a notation of the amount within the envelope. On this showing alone Billie Faye would have no claim to the money, the gifts being undelivered. *Umberger* v. *Westmoreland*, 218 Ark. 632, 238 S. W. 2d 495.

Billie Faye testified, however, that the money was actually delivered to her and later placed in the deposit box for safekeeping. In substance this is her version of the incident: On May 10, 1948, she sold a house to her

father for about $3,000. Cowan agreed to pay $2,000 in cash and to assume certain unpaid bills which Billie Faye had incurred in purchasing household goods. On the day of the sale the father and daughter went together to a bank in Morrilton, where Cowan obtained a cashier's check for $1,169.17 as part of the $2,000 cash payment. An officer of the bank assisted in calculating the amount of this check. After leaving the bank Billie Faye and her father went to the car, where he gave her an additional $1,606. She did not want to carry that much money with her; so the two went to Cowan's office, where Billie Faye counted the money and had her father put it in four envelopes with her name and the amount on the outside of each. She asked him to keep the envelopes in his deposit box, and there they were found after Cowan's death almost a year later. When the box was opened the bank permitted Billie Faye to take the money, which the appellant now seeks to recover for the estate.

The burden of proof was on Billie Faye to show that property found in Cowan's deposit box belonged to her. There are so many circumstances at variance with her version of the matter that we cannot conscientiously say that the burden of proof has been sustained. To begin with, the cash figure of $1,606 must evidently have been arrived at by calculation of some sort, especially as the cashier's check was also calculated to the penny. Yet there is no way to arrive at the $1,606 figure on the basis of the many figures submitted by Billie Faye. She introduced invoices to show the amount of the unpaid furniture bills; but we have been unable to arrive at any method of calculation by which the unpaid cash balance would be $1,606, nor has any such calculation been suggested by counsel. Indeed, the appellee's testimony about this transaction is so vague that it is impossible even to be sure what the alleged agreement was.

Second, the cashier's check was in the sum of $1,-169.17, which is said to have been calculated by taking into account the outstanding furniture bills. But it is undisputed that on the same day, May 10, Cowan closed a small bank account in his name as guardian and with-

drew the balance of $69.17. It is almost impossible to believe that the $69.17 so withdrawn does not also represent the odd dollars and cents in the cashier's check for $1,-169.17. Yet this explanation would have to be rejected if we are to find that the amount of the cashier's check was determined by taking into consideration unpaid bills also involving odd dollars and cents.

Third, it is unlikely that part of the transaction would have been calculated in the presence of the bank officer, and with his assistance, and yet the payment of the cash have been delayed until Cowan and his daughter were alone in their car a few minutes later. And if Billie Faye were afraid to carry the money with her it would have been simpler to return to the bank, where her father carried the account in her name, than to resort to the odd procedure of sealing it in various labeled envelopes.

Fourth, the envelopes themselves indicate that the notations on the outside were not all made at the same time. Three of the envelopes bear the name "Mrs. A. C. Powell," but the fourth is inscribed "For Billie Faye Powell, 1509 West 12th Street, North Little Rock, Ark." It is improbable that Cowan, in simultaneously addressing four envelopes, would have used one name on three of them and a different name, as well as a street address, on the fourth.

Any one of the circumstances we have mentioned might not be sufficient in itself to overcome the appellee's testimony, but the cumulative effect of them all is so great that we cannot say that the weight of the evidence shows a manual delivery of the envelopes to the appellee. Nor did the chancellor so find. Instead, he awarded the $1,606 to Billie Faye upon a finding that it had been "placed in envelopes, marked and put in the lock box to which Mrs. A. C. Powell had a key, whereby she could have taken possession at any time." It is now argued that since Cowan gave Mrs. Powell a key to the deposit box this constituted a sufficient symbolic delivery of the envelopes. But the trouble is that Cowan retained another key himself, so that the asserted symbolic delivery lacks the requirement that the donee's con-

trol be exclusive. "There is no gift where the subject matter instead of passing into the exclusive possession of the donee or his agent, is placed in a receptacle of the donor's, or in a safety vault, to which the donor as well as the donee has access." Brown, Personal Property, § 39. The appellee relies on *Gross* v. *Hoback*, 187 Ark. 20, 58 S. W. 2d 202, but in that case duplicate keys were not involved.

As to the Buick and the $1,606 in cash the decree is reversed and the cause remanded with directions that these assets be surrendered to the estate. In other respects the decree is affirmed, each party to bear her own costs.

WARD, J., dissents as to Part V of the opinion.