548

THE SECURITY BANK, Harrison,
Arkansas *v.* Ronnie PAUL & Bonnie PAUL

CA 79-189                                                594 S.W. 2d 259
Court of Appeals of Arkansas
Opinion delivered February 6, 1980
Released for publication February 27, 1980

*Walker, Campbell & Young,* by: *Ronald D. Young,* for
appellant.

*John B. Driver,* for appellees.

M. STEELE HAYS, Judge. This is an appeal from a decree dismissing the appellant's suit against the appellee, Bonnie Paul and denying the foreclosure of a mortgage on lands belonging to her.

On September 3, 1976, appellee Ronnie Paul, borrowed $60,000 from the appellant, the Security Bank of Harrison, Arkansas, on the basis of a note and a mortgage covering Bonnie Paul's property. The money was to pay debts of a corporation, Square Deal Construction Company, of which Ronnie Paul was one of the owners. Mr. Paul signed the note and mortgage in the presence of one of the bank officers, but Mrs. Paul was not present. Explaining that Mrs. Paul was ill and unable to come in, Mr. Paul took the note and mortgage from the bank and brought them back with the signatures purporting to be Bonnie Paul's. The instruments had been notarized by Mr. Joe Hulsey.

Upon default, appellant filed suit to foreclose. Bonnie Paul counterclaimed, alleging that the mortgage clouded her title to the property and denying that she had ever signed any such mortgage. Ronnie Paul, by deposition, admitted liability for the note and mortgage and also denied that Bonnie Paul had ever signed the instruments.

At trial, Joe Hulsey, an employee of Mr. Paul's construction company, testified that he was at the Paul's home the night before the note and mortgage were executed and that he heard Mrs. Paul tell Mr. Paul to "draw up the papers" and she would sign them. The next day, Mr. Paul brought the papers to work and asked Mr. Hulsey to notarize them. He testified that Mr. Paul said Bonnie Paul was sick and was unable to leave the house, so she had already signed the instruments. Mr. Hulsey testified that he notarized the mortgage, assuming that the signatures were Mr. Paul's. The testimony of both Bonnie Paul and Ronnie Paul was that the signature on the mortgage and note was not Mrs. Paul's. Mr. Phillips, the bank officer, testified that the note and mortgage were recorded without witnessing the signature of Bonnie Paul. He testified that Mrs. Paul had never appeared

before the bank in regard to the loan.

The chancellor found that there was not substantial evidence to indicate that Bonnie Paul had executed either the note or the mortgage, or that she had received any of the proceeds from the loan. Appellants bring this appeal, asserting that the trial court erred in dismissing the complaint for foreclosure as against Bonnie Paul. Specifically, appellant alleges that Mrs. Paul clothed her husband with the apparent authority to execute the instruments and that she received sufficient consideration from the proceeds of the note in that her husband earned his livelihood from the corporation, and the money which he borrowed was used to pay debts of the corporation. Hence, she also had a vested interest in the corporation. We cannot agree.

Ark. Stat. Ann. § 49-208 (Repl. 1971) requires that the grantor "shall appear before an officer having authority by law to take such acknowledgment, and stating that he had executed the same for the consideration and purpose therein mentioned and set forth." Appellants contend that under the rule enunciated in *Forrest City Grocer Company* v. *Gatlin,* 193 Ark. 148, 97 S.W. 2d 910 (1936), the mortgage can be enforced even without a valid acknowledgment where the grantor has given another person the apparent authority to execute the instrument and the grantor should be estopped to deny the validity of the mortgage. Notwithstanding the rule announced in *Gatlin, supra,* we will affirm the judgment of the Chancellor.

We believe the facts in *Gatlin* and in the instant case are distinguishable. In *Gatlin,* the facts were similar in many respects: the wife's property was mortgaged for a debt owed by her husband. In a suit to foreclose, she denied the existence of the mortgage and alleged that she did not sign the instrument. Her husband corroborated her testimony and accepted all liability. Nevertheless, the chancellor in the *Gatlin* case held that the mortgage assigned to Mrs. Warren was a valid instrument, and the Arkansas Supreme Court affirmed, stating that the chancellor's findings were not contrary to the preponderance of the evidence. However, in *Gatlin,* the court observed Mrs. Warren's testimony to be less than credible:

> Without reciting this testimony, it may be said that it was evasive and uncandid, and some of it appears to be preposterous.

Also, in *Gatlin,* the opinion made note of the testimony of a handwriting expert who examined samples of Mr. Warren's signatures and gave his opinion as being that all the signatures had been written by the same person.

In the instant case, there was no testimony by Mrs. Paul which led the court to believe that she had any knowledge of the mortgage on her property. Although Joe Hulsey testified that the night before the execution of the instruments, he heard Mrs. Paul say that she would sign the papers, Mrs. Paul stated that she had never indicated in any way that she would mortgage her property. This conflict creates a question of the credibility of the witnesses in which the appellate court is guided by the conclusion of the chancellor as between the uncorroborated testimony of two litigants. *Cowan* v. *Powell,* 219 Ark. 498, 243 S.W. 2d 373 (1951); *Leftwich* v. *Cash Lumber Company,* 214 Ark. 586, 217 S.W. 2d 357 (1949). The chancellor stands in a better position to review the witnesses' testimony than the reviewing court, and where the chancellor's findings are not against a preponderance of the evidence, his judgment will be affirmed. *Apple* v. *Cooper,* 263 Ark. 467, 565 S.W. 2d 436 (1978); *Minton* v. *McGowan,* 256 Ark. 726, 510 S.W. 2d 272 (1974); *Arkansas State Highway Commission* v. *Troutman,* 240 Ark. 424, 399 S.W. 2d 686 (1966).

In the case before us, we cannot say that the chancellor's findings were against a preponderance of the evidence. To the contrary, we believe that the evidence and the decision of the chancellor are comportable and, accordingly, we affirm.

WRIGHT, C.J., not participating.