645 F.2d 15
 7 Bankr.Ct.Dec. 1009
 FIRST NATIONAL BANK OF HARRISON, Hammerschmidt Lumber
Company, Appellants,
Holt, Inc., Reeves Furniture Company, Joel R. Williams and
Harrison Ready Mix,
v.
Ronnie and Bonnie PAUL, Appellees.
 No. 80-2022.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1981.
Decided April 6, 1981.
 
 Roy E. Danuser, Mountain Home, Ark., Bradley D. Jesson, Hardin, Jesson & Dawson, Fort Smith, Ark., for appellant Hammerschmidt Lumber Co.
 John B. Driver, Marshall, Ark., for appellee.
 Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.
 PER CURIAM.
 
 
 1
 Hammerschmidt Lumber Company appeals the district court's affirmance of an order of the bankruptcy court which dismissed its petition for involuntary bankruptcy against Bonnie Paul.
 
 
 2
 In the bankruptcy court, Hammerschmidt Lumber contended that Mrs. Paul had committed an act of bankruptcy under 11 U.S.C. § 21(a)(3).
 
 11 U.S.C. § 21(a)(3) provides:
 
 3
 a. Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; * * *.
 
 
 4
 Hammerschmidt Lumber argued that Mrs. Paul had executed a promissory note and mortgage in favor of Hammerschmidt Lumber which encumbered 160 acres of land owned exclusively by Mrs. Paul with a $32,869.79 debt. It was claimed that Mrs. Paul was insolvent due to this debt on her land and while insolvent four state court judgments had been rendered against Mrs. Paul.
 
 
 5
 The evidence presented to the bankruptcy court showed that the mortgage and note had been executed to obtain additional financing from Hammerschmidt Lumber for construction supplies. These supplies were furnished to a construction company in which Mr. Ronnie Paul was involved. While Mr. Paul was an officer and stockholder of the construction company, he purchased a number of lots on which construction of homes was planned. When the construction company experienced financial problems, Mr. Paul used the lots for collateral and each lot was heavily encumbered. Mr. Paul executed mortgages and other instruments on these lots and Mrs. Paul had signed these documents to comply with Arkansas' rules on release of dower interests. There was no evidence that Mrs. Paul was ever associated with the construction company, in any capacity.
 
 
 6
 The mortgage and note at issue here, covered certain of the lots purchased by Mr. Paul and also the 160 acres owned solely by Mrs. Paul. While the signature of Mrs. Paul appears on these instruments along with that of Mr. Paul, Mrs. Paul denied that she executed the documents.
 
 
 7
 The four suits filed in state court by creditors sought to foreclose interests in the various lots purchased by Mr. Paul. Four judgments were rendered against Mr. and Mrs. Paul. The judgment in one suit, Chancery Court Case No. E-77-67, Horton v. Paul, involved a determination of the priorities as between the original seller and Hammerschmidt Lumber as to one of the lots listed on the mortgage and notes in question here. That suit did not involve the 160 acres owned by Mrs. Paul.
 
 
 8
 Mrs. Paul denies that she was ever served with summonses in any of the four suits or that she ever retained an attorney to answer on her behalf.
 
 
 9
 The district court affirmed the bankruptcy court's order which made three key factual findings. First, that Mrs. Paul's signature on the mortgage and note which encumbered her 160 acres had been forged. Second, that Mrs. Paul did not know that the four suits by creditors had been filed against her and she had never been personally served with the summonses issued in those suits. And third, that Mrs. Paul did not retain the attorney who purportedly represented her in the four suits.
 
 
 10
 The district court recognized that these factual findings resulted from the bankruptcy court's credibility determinations regarding the testimony of Mrs. Paul and that of Notary Joe Hulsey and Deputy Sheriff Thomas Duck.[1] The district court found "that the presumptions in favor of the validity of sheriff's returns, notarized signatures or entry of appearance by counsel were overcome by clear, cogent, satisfactory and convincing evidence." The district court also noted that even if the state court had obtained personal jurisdiction over Mrs. Paul through service on her husband at their home, such service would not provide the notice or knowledge required to be shown under 11 U.S.C. § 21(a)(3).
 
 
 11
 In conclusion, the district court found that even if certain judgments of the state court are valid as against Mrs. Paul, the value of her land (unencumbered by the $32,869.79 debt) far exceeds the deficiency on those judgments and, thus, she is solvent.
 
 
 12
 On appeal, Hammerschmidt Lumber again argues that Mrs. Paul failed to overcome presumptions of validity regarding notarized signatures and sheriff's returns. It is also argued that Mr. Paul had "apparent authority" to execute instruments on behalf of Mrs. Paul. A similar claim was clearly rejected by the Arkansas courts in Security Bank of Harrison v. Paul, 594 S.W.2d 259, 260-61 (Ark.App.1980).
 
 
 13
 We have studied the record, including the opinions of the district court and bankruptcy court and the briefs of the parties to this action. We find no merit to appellant's arguments, and accordingly affirm pursuant to Rule 14 of the Rules of this court on the basis of the district court's opinion.
 
 
 
 [1]
 We note that the bankruptcy court was the second court that has credited Mrs. Paul's testimony over that of Joe Hulsey. See Security Bank of Harrison v. Paul, 594 S.W.2d 259 (Ark.App.1980)