Mary Clay O'LEARY *v.* COMMERCIAL NATIONAL BANK OF LITTLE ROCK, ARKANSAS

CA 80-449                                    614 S.W. 2d 682

Court of Appeals of Arkansas
Opinion delivered May 6, 1981

*Gannaway & Darrow*, for appellant.

*House, Holmes & Jewell*, for appellee.

MELVIN MAYFIELD, Chief Judge. This is an appeal by Mary Clay O'Leary from a decision of the Pulaski Chancery Court dismissing her motion to set aside a decree which permitted foreclosure against her homestead.

The record shows that in July of 1979 the appellee-bank brought a foreclosure action against the appellant, her husband, and his parents. Appellant's husband and father-in-law (now deceased) owned and operated O'Leary Oil Company, a partnership. O'Leary Oil Company borrowed some large sums of money from appellee and one of the documents securing that obligation was a mortgage on fourteen acres of land where appellant lived with her husband and their children. This mortgage bore the appellant's purported signature but she contends she did not sign it.

When suit was filed, the appellant's husband and his mother contacted an attorney (according to the attorney) and on August 6, 1979, he filed a general denial for all the O'Learys although appellant was not personally served

until September 7, 1979. On that day (she testified on the motion hearing) she called the attorney, told him she had not signed the mortgage, and he told her it would be taken care of and not to worry. When her husband came home she told him about being served and he also said not to worry about it.

She also testified that she did not talk to the attorney again and her husband kept telling her everything was going to be all right, but on February 8, 1980, she found out differently because on that day the sheriff showed up with a writ of execution and she found out that judgment had been entered and the mortgage foreclosed.

According to the attorney, he understood from the first that financing was going to be obtained by the O'Leary Oil Company to settle with the bank. When the appellant called him, he was put "in a spot," but he had been assured that settlement would be made. In October, when Mr. O'Leary, Sr., died, the bank's attorney told him they were not interested in putting a widow out in the street. So, in December, a consent decree was worked out based upon the assumption there would be a settlement; however, no settlement was made, the decree was entered, and on Feburary 12 he learned that appellant's home had been sold under the decree.[1]

At the hearing on the motion to set aside the consent decree the appellant's testimony was certainly sufficient to show she had a meritorious defense to the foreclosure suit under our decisions of *Walthall* v. *McArthur*, 185 Ark. 437, 48 S.W. 2d 227 (1932); *Hall* v. *Mitchell*, 175 Ark. 641, 1 S.W. 2d 59 (1927); and *Security Bank of Harrison* v. *Paul*, 268 Ark. 548, 594 S.W. 2d 259 (Ark. App. 1980). However, this defense was not presented to the trial court and we affirm that court's refusal to set aside its decree to allow the defense to be presented.

There are, as appellant points out, many decisions holding that a court has the inherent power to set aside a judgment during the term at which it was rendered. *Ashley* v. *Hyde*, 6 Ark. 92, 42 Am. Dec. 685 (1845); *The Security Bank of Branson, Missouri* v. *Speer*, 203 Ark. 562, 157 S.W. 2d 775

---

[1]This is not the same attorney who filed the motion to set aside the decree and who now represents the appellant in this appeal.

(1942); *Robbins* v. *Guy*, 244 Ark. 590, 426 S.W. 2d 393 (1968);*Massengale* v.*Johnson*, 269 Ark. 269, 599 S.W. 2d 743 (1980).

And since appellant's motion to set aside the consent decree was filed and heard within ninety (90) days of the filing of the decree, it might have been set aside within that ninety (90) day period just as it might have during the term under the law prior to January 1, 1970. Rule 60, Ark. Rules of Civil Procedure.

But our cases have also carved out some restrictions on this power, mainly in the area of default judgments, judicial sales, and jury verdicts. *Missouri Pacific Railroad Co.* v. *Orsburn*, 252 Ark. 872, 481 S.W. 2d 356 (1972). As to judicial sales, in the case of *Robbins, supra*, the trial court had set aside a judicial sale because of inadequacy of price but the Supreme Court reversed. The reason for reversal is well expressed in the following quotation from a case in the concurring opinion:

> Courts have adopted as a wise public policy, the rule that confidence in the stability of judicial sales should be maintained, so that competitive bidding may be encouraged by the assurance that, in the absence of fraud or misconduct, the highest bidder will be accepted as the purchaser of the property offered for sale.

In *Fleming* v. *Southland Life Insurance Co.*, 263 Ark. 272, 564 S.W. 2d 216 (1978), the chancellor refused to let the mortgage debtors pay the judgment and redeem their land where there had been a foreclosure sale but the sale had not been confirmed. The action of the chancellor was affirmed and the opinion states that the court "has the responsibility to protect the integrity of judicial sales to the end that bidders can have confidence that the legitimate high bid will be respected by the court."

In the instant case the record shows that at the time of the hearing on the motion to set aside the decree of foreclosure, the mortgaged property had already been advertised and sold and that the bank was the successful bidder and had

a commissioner's deed to the property. The cases cited above show that a court's power to set aside a judgment during the term at which it was rendered is restricted, as far as judicial sales are concerned, by the public policy of enforcing the stability of those sales.

The appellant's situation is not improved by her attorney's failure to present the defense that she had not signed the mortgage on her homestead. To the contrary, many cases hold that a party is bound by the acts and omissions of his attorney. *Alger* v. *Beasley*, 180 Ark. 46, 20 S.W. 2d 317 (1929); *Merchants' and Planters' Bank and Trust Co.* v. *Ussery*, 183 Ark. 838, 38 S.W. 2d 1087 (1931); *Dengler* v. *Dengler*, 196 Ark. 913, 120 S.W. 2d 340 (1938); *Beth* v. *Harris, Executor*, 208 Ark. 903, 188 S.W. 2d 119 (1945); *Moore, Adm'x* v. *Robertson*, 242 Ark. 413, 413 S.W. 2d 872 (1967).

The appellant attaches significance to the language in *Ussery* and *Beth* that one is bound by the acts and omissions of his attorney *where no fraud or unfairness if made to appear*. This language in *Ussery* is followed by the statement "she must be bound by his negligence or failure which was not occasioned by any misleading conduct on the part of the opposing party or misleading statement made by any officer of the court." We must conclude, therefore, that the fraud and unfairness referred to must be something other than the acts or omissions of one's own attorney.

Applying the policy of the law with regard to setting aside judgments where judicial sales have occurred and the policy of the law that holds one bound by the acts or omissions of his own attorney, we must affirm the chancellor's decision.

GLAZE, J., not participating.